J. F. AMES ET AL. *v.* B. G. WILLIAMS ET AL.

1. GUARDIAN AND WARD.  *Accounting.  Bond.*

  A guardian and his sureties are accountable not only for money col-
  lected by him, but also for money which he might and could have
  collected by proper diligence.

2. SAME.  *Delivery of assets to successor.  Estoppel.*

  When a guardian neglects to collect a solvent note due him as such,
  and delivers the same to his successor, his wards, in contesting his
  account, are not estopped from charging him and his sureties as if
  he had actually collected the money due on the note, with interest,
  by the fact that they had reduced the note to judgment against
  the maker, even where the guardian is himself the maker of the
  note, credit being given, however, for what was realized by the
  suit.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

Robert C. Patty, deceased, was guardian of the appellees,
and as such came into possession, among other assets, of a note
for $2,200, executed by himself, payable to the ancestor of his
wards, and which was secured by deed in trust on lands.    Patty
never accounted for any part of this note.    After Patty's death
his administratrix, in 1891, filed a final account of his guardian-
ship, and delivered the $2,200 note, and the deed of trust secur-
ing it, to the succeeding guardian of the appellees.    In 1892
the appellees instituted a suit to enforce the lien of the deed in
trust securing said note, and for a personal decree against
Patty's administratrix for any balance that might remain after
sale of the property.    This suit proceeded to a final decree,
which adjudged the sum due on the note, with simple interest
to date of decree, April, 1893, at $2,941.44.    During the
pendency of said suit the appellees filed exceptions to the final
account of Patty's guardianship, presented by his administra-

trix, specifying, among many other exceptions, the failure to charge Patty with the $2,200 note, with interest, etc.    After the final decree in the foreclosure suit, and pending the exceptions to the final account of Patty's guardianship, the appellees began the present suit upon Patty's bond as guardian, and the present suit has three times before been in the supreme court, and is three times reported: *Patty* v. *Williams*, 71 Miss., 837; *Ames* v. *Williams*, 72 Miss., 760, and *Ames* v. *Williams*, 73 Miss., 772.

In April, 1894, this case and the suit involving the exceptions to Patty's final account of the guardianship were, for purposes of hearing, consolidated, as each involved an investigation of the amount due to appellees.    Before a final decree in the consolidated causes, the appellees instituted and conducted to a successful conclusion still another suit against the widow and administratrix of Patty, based in part upon their ownership of the decree in the foreclosure suit, and they succeeded in vacating as fraudulent a conveyance of lands made by Patty to his wife, and obtained a decree ordering the lands to be sold to pay them $1,797.90—the balance of said decree after sale of the lands in the deed of trust.

At the hearing of the consolidated suits, from the decree in which the present appeal is prosecuted, it was shown that the $2,200 note was good, and could have been collected at the time Patty became guardian and received the note as such. The proceedings and decrees in all the suits above mentioned were offered in evidence, and the appellants contended that the appellees were estopped thereby from claiming any greater sum as due on account of said note, than that which was adjudged to be due on it in the foreclosure suit and in the suit to vacate the fraudulent conveyance.    The court below did not take this view, but decreed liability as if Patty had collected the note in his lifetime, and interest was calculated with annual rests.    The foregoing statement contains all the facts deemed necessary to be stated, in view of the opinion of the court.

*C. B. Ames,* for appellants.

When Patty was appointed guardian of appellees, he owed a note payable to their father, which was then due. This note was never paid by Patty. After his death there were two inconsistent courses left open to them with regard to this note. The one was to accept the note as assets coming into their hands; the other was to regard that as done which should have been done, and treat the note as having been collected by Patty, thereby charging him on his bond with the proceeds thereof. These two courses were utterly inconsistent with each other. The one was to treat the note as paid; the other was to regard the note and trust deed, securing it, as still in existence and unsatisfied. They elected the latter remedy. On two separate occasions they came into the chancery court and procured relief solely upon the ground that this note and trust deed was still outstanding assets in their hands and unsatisfied.

After having exhausted their rights upon that theory of the case, they now come into court and ask for further relief, based upon a wholly inconsistent theory of the case. Having exhausted the power of the court to aid them, because of the existence of the note and trust deed, they now come into the very same court and seek relief because of the nonexistence of the very same note and trust deed.

They do not even have the grace to ask for damages for failure on the part of Patty to collect the note. On the contrary, the relief they now claim is wholly inconsistent with a prayer for damages, because it presupposes the collection of the note at the time of Patty's appointment. In this proceeding they do not admit the noncollection of the note, and hence they do not ask for damages, and could not. The theory of their case now is, that the note was collected, and hence it is utterly at variance with a claim for damages for failure to collect.

*J. E. Rives,* for appellees.

It is contended that appellees are estopped from asserting

any claim in this proceeding against Patty and his bondsmen, for the reason that since Patty's death two suits were begun on this note, and something was realized thereon; that having accepted the note, and obtained decrees for the amount thereon, we are precluded from having Patty charged on his bond for this money as having been collected by him. The evidence adduced by appellants, in support of this position, are the records in those two cases, one of which was a proceeding to foreclose the trust deed which Patty had given to secure the note, and the other was a proceeding to subject certain other property to the payment of the note.

In the first place, the parties to those proceedings and in this proceeding are not the same. In the first of those cases, the Williams heirs sought, by their bill, to foreclose a trust deed given by Patty individually, to secure his individual note which became the property of his wards. Patty, as guardian, having failed to collect the note, his wards, after his death, took the same proceedings to collect it as they would have had to take in case the note had been due and owing by some one else. It was not brought against him in his official capacity as guardian. The total amount that could have been collected from him in his individual capacity was the face of the note and simple interest, just what we could have collected from anyone else on any note they might be owing.

The other suit was brought to subject the value of the homestead (over $2,000) to the payment of what was due these wards, and in the bill in that case it was expressly stated that we claimed not only the amount of this note, but whatever might be realized upon the exceptions in this case. That was not between the same parties.

In the next place, in order to hold the position of appellants as sound, it would be necessary to hold that in a case where a guardian has neglected his duty by failing to collect an indebtedness due his ward, and turns over the evidence of that indebtedness to the succeeding guardian, that succeeding guardian

cannot collect from the debtor the amount owing by him and then proceed against the defaulting guardian for any loss sustained by reason of his neglect of duty.   Besides that, the decree of the chancellor requires Patty to be credited with whatever sums which have been realized from those suits, or any other source, and only holds him liable for the loss occasioned for the failure, on his part, to perform his duty.

To show the fallacy of their position, let us suppose that this note was not Patty's individual note, but a note given by A B. Would a suit against A B to collect what was due on the note be a bar to a suit against Patty on his bond as guardian for what he, as guardian, would be liable for on account of his neglect of duty?   He and his bondsmen would undoubtedly be liable for the whole amount of the note to the same extent as if he had collected it when due, and the suits against the maker of the note, so far from being a bar to such action, and so far from being a ground of objection, are, in reality, for the benefit of the bondsmen.   Certainly they could not be heard to complain.

WOODS, J., delivered the opinion of the court.

The opinion of this court on the former appeal in this case (*Ames* v. *Williams*, 73 Miss., 772), substantially disposes of the third and fourth assignments of error in the present appeal.   These assignments are, in brief, that the chancery court erred in making annual rests, in stating the account of Patty's administratrix, and in compounding interest, and in not allowing expenditures in excess of income collected during any one year.

Now, both assignments are clearly held by us to be without merit in the former opinion dismissing the other appeal.   It was declared by us, that if, as is suggested, the guardian exceeded the income of the ward, the fact that a part of that income consisted of compound interest, even if that interest should not have been charged, would result in discharging the guardian

from liability therefor, for certainly, under our statute, no expenditure above the income could be allowed, and the commissioner is directed to allow all proper expenditures to an amount equal to the income, of whatever it is composed.'' This leaves no ground for contention, as to these assignments, on the present appeal.

The. first and second assignments of error may be conveniently and properly considered together. By the first assignment it is alleged that the court below erred in sustaining the second exception to the final account of R. C. Patty's guardianship, and, by the second assignment, error is predicated of the court's action in directing the amount due on the note for $2,200, made by Patty to A. M. Williams, to be charged against Patty, guardian, as having been collected by him. The second exception to the final account of Patty's guardianship raises this same question of charging Patty with the balance due on the $2,200 note.

That this note came into the guardian's hands as such, that its maker was solvent, and that it could have been collected during Patty's lifetime, had he made any effort to do so, is not disputable. We are at a loss to see why the appellants should not be held liable to account to Patty's wards for the uncollected balance of the note. They are equally liable for money which actually came into the guardian's hands and for that which could and should have been collected by a faithful discharge of his duties by the guardian. The mere fact that the present guardian has resorted to a security given with the note to make its payment more certain, and the further fact that he has actually realized some part of the balance due on the note, by such resort, cannot and does not absolve from liability these sureties who have bound themselves for the faithful performance of his duties by the guardian, when it is shown that the guardian was derelict in not attempting to collect, as should have been done, a perfectly solvent credit until it had become worthless. If their principal had actually reduced the $2,200

to possession, his sureties would be liable, if not properly accounted for; and, if not actually reduced to possession when it was the guardian's plain duty to do so, and when that might have been done, then, too, the sureties must respond.   See *Mc Williams* v. *Norfleet*, 63 Miss., 183, and cases therein cited. It is impossible to conceive of any other rule than that of holding the guardian and his sureties liable for losses sustained by the ward by reason of the guardian's neglect, by timely action, to collect as it was his duty to do.

*Affirmed.*