AETNA INDEMNITY CO. v. STATE FOR USE OF EVA MAE GILLASPY ET AL.

[57 South. 980.]

1. GUARDIAN AND WARD. *Bond. Liability covered. Conversion. Bond given after actual conversion. Code* 1906, *Sec.* 2407.

Where a chancery court proceeding under Sec. 2407, Code of 1906, requires a guardian to execute a new bond, such new bond has no retrospective effect unless such bond plainly indicates an intention that it should have such effect.

2. SAME.

Where it is plain that a guardian converted the funds of his ward to his own use while acting as guardian under the first bond and afterwards gives a second bond, the sureties on the second bond are not liable for such conversion but the sureties on the first bond are liable.

3. Same.

    Where when the second bond was given the actual conversion of
      the wards' property had taken place under the first bond, but the
      guardian was solvent and fully able to pay the amount then.
      due. the wards and the amount was lost to them because the
      guardian failed and neglected to pay over the amount to them
      as he should have done, in such case the sureties on the second
      bond are liable, as well as the sureties on the first bond.

4. Guardian ad Litem.    *Next friend.    Actions.*

    When a person bringing suit for a minor ward styles himself in
      the pleadings as "guardian *ad litem,*" when in fact he is suing
      as "next friend," he will be treated as such and the courts will
      not look with critical eyes on the characterization which the
      next friend chooses to give himself in the pleadings.

Appeal from the chancery court of Newton county.

    Hon. Sam Whitman, Jr., Judge.

    Suit by the state for the use of Eva Mae Gillaspy and
others against the Aetna Indemnity Company and oth-
ers. Judgment for plaintiffs against the Aetna Indem-
nity Company and suit dismissed as to the other defend-
ants. The Aetna Indemnity Company appeals and plain-
tiff prosecutes a cross-appeal.

    The facts are fully stated in the opinion of the court.

    *W. I. Munn* and *Amis & Dunn,* for appellant.

    The case of the *State* v. *Shackleford,* reported in 56
Miss, 648, and the case of *McWilliams* v. *Norfleet,* re-
ported in 60 Miss. 987, both hold that the surety on a
substituted guardian's bond is not liable for defaults
or conversions occurring before the execution of the
bond; and the case of *State* v. *Shackleford, supra,* fur-
ther holds that since the surety is not liable for the value
of the property or money converted by the guardian to
his own use, the surety is not liable for the failure of the
guardian to render an account of it. These cases, so
far as we know, have never been criticised or overruled,
and are the law in this state at the present time; and if
so, then the Indemnity Company is not liable for the

default of the guardian in converting said sum of one thousand seven hundred twelve dollars and thirteen cents belonging to each of his wards, prior to the execution of the substituted bond, nor is the Indemnity Company liable for the failure of the guardian to render an account of the sum so embezzled by him.

The above cases, as we understand it, dispose of the first two questions above stated, and the only remaining question is as to whether or not the Indemnity Company is liable for the failure of the guardian to collect from himself, as an individual, the sum previously converted to his own use.

The case most nearly analagous to the proposition last above presented, is the case of *McWilliams* v. *Norfleet*, reported in 63 Miss. 183. The facts of that case were as follows:

"In 1869, R. A. Roberts was made the guardian of Belle T. Means and her two sisters, minors, and executed the required bond. In 1872, Roberts and Anderson entered into a partnership for the purpose of carrying on a general merchandise business. Roberts, without any order of court, loaned the firm of Roberts & Anderson, of which he was a member ten thousand dollars of money belonging to his wards, taking the note of the firm therefor, payable to him, as guardian. In February 1873, R. E. Chew was taken into the firm as an equal partner, and the business of the old firm merged into that of Roberts, Anderson & Chew. In April 1873, Roberts, of his own motion, appeared before the court and executed a new guardian's bond with J. P. Norfleet, R. O. Woodson, J. R. Daugherty, W. S. Puryear, J. D. Fennell, and Jas. B. Potts as sureties. Both Roberts and Anderson were solvent long after the execution of this new bond, but Roberts made no effort to collect the note.

In 1880, Roberts, and the firm of which he was a member, failed. Mrs. Belle T. McWilliams, formerly Belle

T. Means, exihibited a bill against Roberts, praying
for a final settlement of his account as guardian, and
made the sureties on the second bond parties to the
suit.''

In passing upon the facts of that case, the supreme
court speaking through Arnold, J., holds the following
language:

''A guardian's bond imports responsibility for losses
occasioned by negligence or inattention, as well as for
the corruption of the guardian. It cannot be that a
breach of the first bond confers an infraction of the latter.
They are liable not only for the money and assets of
the wards' estate, which actually came into the hands of
Roberts, but also for such as he might and could have
collected and reduced to possession by a faithful admin-
istration of his office. Any other doctrine would be a
novelty in the law in relation to guardians and trusts.

''The record shows that when the second bond was
executed Roberts seld a note for ten thousand dollars
payable to him, as guardian, made by a solvent firm of
which he was a member, for money of his wards previ-
ously lent him without an order of the court for that
purpose, and that for several years afterwards the note
could unquestionably have been collected by proper at-
tention, and that Roberts made no effort whatever to
collect the note and that the money due thereon was lost.
The sureties on the second bond are liable for the amount
of the note and interest thereon at ten per cent, as well
as for other money collected by the guardian; they be-
came sponsors for his fidelity.''

As we understand it, the difference between the case
just quoted from and the case at bar, is this, to-wit:
That in the McWilliams case, the guardian had dealt
with the fund in his hands as trust funds. He had
loaned the money at interest to the firm of Roberts &
Anderson, and had taken the note of Roberts & Ander-
son for the amount loaned, payable to himself, as guar-

dian. In that case, there was all the time a trust fund
of ten thousand dollars actually in existence, repre-
sented by the indebtedness of the firm of Roberts &
Anderson to the guardian, as evidenced by the note pay-
able to Roberts as guardian. There was no conversion
of the fund at all, but there was simply a loan made by
the guardian of the funds of of the wards, without au-
thority of court, and all the duty that he owed was the
duty of using reasonable diligence in the collection of
the amount due on this note; and the court held that be-
cause he could have collected it, and made no effort to
collect it, he and his sureties were liable for the amount
of the note, which was lost. In other words, the court
placed the ground of liability in that case on the
negligence of the guardian in failing to collect a note
payable to himself, as guardian, and the same result
would have been reached and the same rule applied, if
the court, in the first instance, had authorized the guar-
dian to make the loan that was made, or any other loan.

In this case, however, there was not at the time of
the execution of the substituted bond, any trust fund in
existence, excepting the sum of one hundred and ten
dollars and sixty-eight cents for each of the wards. The
guardian had long prior thereto embezzled and convert-
ed all the funds in his hands to his own use, excepting
the said sum of one hundred and ten dollars and sixty-
eight cents for each of his wards. He did not recog-
nize or treat any sum other than the one hundred and
ten dollars and sixty-eight cents as trust funds. So far
as the estate of the wards was concerned it had been
wholly confiscated and embezzled prior to the execution
of the substituted bond, with the exception of the said
sum of one hundred and ten dollars and sixty-eight
cents; and because of that fact the guardian and the
sureties on his original bond had become and then was
absolutely and unconditionally liable to the wards for
the conversion and confiscation of their estate, and no

order of the court made *ex parte* could relieve them or either of them from this liability.

In the McWilliams case, at the time of the execution of the substituted bond, Roberts, as guardian, held, as guardian, a note payable to himself, as guardian, for ten thousand dollars which was a part of the assets of the estate of his wards in his hands, for which he was bound to account to the court, and touching the collection of which, it was his duty to exercise reasonable care and diligence.

In this case, at the time of the execution of the substituted bond, there was nothing in the hands of the guardian, as guardian, excepting the sum of one hundred and ten dollars and sixty-eight cents for each of his wards. He did not recognize the funds in his hands as trust funds at all, but claimed and used, and continued to claim and use the same as his own property and not as the property of his wards. The liability of himself and the sureties on his original bond had become fixed and absolute and nothing was ever done by the guardian or any one else to change that status in the least. The liability of the sureties on the original bond could not be shifted to the surety on the substituted bond by an *ex parte* decree of the court, or by any other act short of a special undertaking on the part of the surety in the substituted bond to that effect. It seems to us that there is no escape from the proposition that the sureties on the original bond are liable to the wards for the conversion of the funds by the guardian prior to the execution of the substituted bond. And if court should also hold that the surety in the substituted bond is also liable because of the failure of the guardian to collect the amount so embezzled by him, from himself, then the effect of such holding will be that the substituted bond was not, in fact, a new or substituted bond at all, but was an aditional bond or security.

*J. R. Byrd,* for appellees and cross-appellants.

This is a three cornered fight; the appellant, the Aetna Indemnity Company, contends that it is not liable but that cross-appellants, J. B. McAlpin et al., are liable, and J. B. McAlpin et al., cross-appellees, contend that they are not liable but that the Aetna Indemnity Company appellant, is liable, and appellees contend that they are both liable to them.

The proof in this case established beyond a doubt that G. M. Gillaspy, guardian, was abundantly able to pay to his said wards every cent he was due them from the time he became guardian up to a few months before his death.  That at the time the Aetna Indemnity Company's bond was given, he was solvent and was ready and willing to settle with his wards or the court, had he been required to do so.

Counsel for appellant seem to think that because the guardian deposited the money in the bank in his own name and then drew it out in his own name, he, therefore, embezzled the money before the giving of the bond by appellant, and it is therefore not liable.  This reasoning is manifestly unsound; when he placed the money in the bank to his individual account it necessarily follows that he must draw it out in his individual name. As to whether he drew it out of the bank for the purpose of investing it, as the law requires him to do, for the benefit of his wards, the record is silent.  The only penalty visited upon him for this negelect of duty is fixed by the section of the Code just quoted.  This penalty, visited upon the guardian for using and mingling his wards' property with his, is upheld in the cases of *Garland* v. *Norman,* 50 Miss. 238; *Boyd* v. *Hawkins,* 60 Miss. 277; *Jamison* v. *Glover,* 46 Miss. 510.

It is an elementary principle of law that the bondsmen of a guardian are liable for the neglect or failure of the guardian to collect any outstanding indebtedness due the ward where the same could have been col-

lected, had he exercised reasonable diligence. It is as much the duty of the guardian to collect outstanding debts as it is to protect and care for that which is in his possession. A guardian failing in this is liable on his bond for any sum he might have collected by the exercise of reasonable diligence. G. M. Gillaspy, the individual, and G. M. Gillaspy, the guardian, in law, are two separate and distinct individuals. When he was acting in the fiduciary character as guardian he must deal with claims, debts, etc., held against his wards' estate by himself in the same manner as if they were held by strangers, and failing to do so and loss occurs, his bondsmen must make it good. Under the testimony in this case there cannot be a shadow of a doubt, that at the time of the giving of this bond by appellant, the Aetna Indemnity Company, and for a long time thereafter, G. M. Gillaspy, guardian, could have collected every dollar of this money, out of G. M. Gillaspy, the individual, and failing to do this he breached his bond and appellant is liable for said breach. If the guardian still had the funds in his power, though he had already wrongfully used or converted them, he will be liable for them on the new bond. Can there be any doubt, in this case that this guardian still had these funds in his power in view of the testimony in this record. I quote the following from the 15th volume, pages 116 and 119 of 2nd edition of the American and English Encyclopedia of Law. "Additional and Substituted Bonds,—Where additional bonds are required and given, the former bond continues to be security for the entire management of the estate. If the new bond is a substitution for the old, instead of an addition to it, though the old bond may be discharged upon the substitution, the sureties continue to be liable for any default already committed, but not for subsequent defaults. The carrying forward into later balanced sums already converted which are lost, will not relieve the sureties on the for-

mer bond from liability. In either case the new bonds-
men are liable for all defaults which occur after the giv-
ing of their bond, and if the guardian still has the funds
in his power, though he had already wrongfully invested
or converted them, he will be liable for them on the new
bond; so he will be liable on such bond for a former mis-
appropriation if he carried forward the balance to his
later account."

The authority just quoted holds that "if the guard-
ian still has the funds in his power, though he had al-
ready wrongfully invested or converted them, he will
be liable for them on the new bond." This doctrine is
upheld in the case of *Parker v. Medsker,* 80 Ind. 155;
*State v. Dennis,* 58 Mo. App. 568; *Clark v. Wilkerson,*
69 Wis. 543. We contend that under the state of facts
shown by the record in this case that the new bond is
not alone liable but that the old one is equally liable
because if there was a conversion prior to the giving
of the new bond or if the placing of the money in the
bank by the guardian to his individual credit was a mis-
appropriation thereof, then that alone makes the old
bondsmen liable to the full penalty of their bond; or if
they failed to show what became of the one hundred and
ten dollars and sixty-eight cents shown to be in the
hands of the guardian on November 20, 1902, the old
bondsmen are liable for that.

This guardian filed a second and last annual account
on the 20th day of November, 1902. This was long be-
fore the giving of the new bond. He never at any time
after the 20th of November, 1902, filed an annual account
notwithstanding the law explicitly requires a guardian
to report at least once every year, nor did his bonds-
men make a report after his death as required by law.
Every guardian is required under the law, to make a
true account and if he fails to do so and a loss is occa-
sioned thereby, he is liable on his bond. One of the con-
ditions of every guardian's bond is, that he shall make

true accounting, and if it is not written on the face of
the bond, the law writes it there. If he fails to comply
with this requirement the bond is breached and all loses
sustained are recoverable from the bondsmen. And this
is the only sane and reasonable rule.

I quote the following from the 15th volume of the
American and English Encyclopedia of Law, page 119,
2nd edition: "But whether the guardian is in any event
liable on the new bond for the entire funds of the estate,
though the loss occurred before the giving of the new
bond and though the balance was not carried forward
to the later account, is a question upon which the au-
thorities are not entirely harmonious. The prevailing
rule holds him liable on the grounds of his obligation
to make true account, but in a few jurisdictions the con-
trary rule prevails." This is the rule laid down by the
courts of all the states, except perhaps Indiana and
Mississippi. The case of *Parker* v. *Medsker,* 80 Ind.
155, seems to be in conflict with *Armstrong* v. *State,* 7
Blackf. (Ind.) 81 and the cases of *McWilliams* v. *Nor-
fleet,* 60 Miss. 987; *State* v. *Shackleford,* 56 Miss. 648,
seems to be somewhat in conflict with *Hull* v. *State,* 53
Miss. 262. The Mississippi cases just referred to were
decided under a different statute to the one under which
we are now operating. This perhaps, is the reason why
our court seems to have gotten out of line, on this pro-
position, with the great weight of authority. Sec. 17,
Art. 145, Code of 1857, speaking of guardian's bond
concludes with these words, "and a new guardian ap-
pointed by the new bond shall only operate for the fu-
ture, the original sureties being bound for all breaches
of the first bond." Sec. 1212, Code of 1871, uses this
language: "If the new bond be given, the sureties on
the former bond shall not be liable thereon, except as to
all acts of the guardian up to the time of executing the
new bond." Sec. 2101, Code 1880, concludes with these
words, "But the new sureties shall only be bound for

the future, the original sureties being bound for all breaches, of the first bond.'' This idea of the statute was left out of the Code of 1892, Sec. 2190, and the Code of 1906, Sec. 2407. The statute under which we are now operating reads as follows: ''The court by which a guardian was appointed, may, for sufficient cause, remove him after having him cited to appear; and if the court should ascertain that the sureties of a guardian were insufficient at the time the bond was executed, or have since become so, or are of doubtful solvency, it may require the guardian to give a new bond; and if he refuse or neglect to do so, he may be removed. If the sureties of any guardian apprehend danger and desire to be discharged, they may petition the court for that purpose and the guardian shall be cited; and if, on hearing the court should be of opinion that the complaint is well-founded, the guardian may be required to give a new bond, and, on failure to do so, may be removed.'' In the case of *Matthews et al.* v. *Malden et al.*, 4 Am. and Eng. Ann. Cas. 344, the court held, ''When the sureties on the bond of a guardian petition the probate court that the guardian give a new bond and a new bond is filed, the sureties on the old bond are liable for any devastavit prior to the approval of the new bond. But in such a case the sureties on the new bond are liable for a conversion of the trust funds before the making of the new bond, upon the ground of the guardian's obligation to make true account.'' This case is almost identical with the one under consideration. I respectfully call the court's attention to the notes cited under this Alabama case and especially to the reference made to Mississippi statute.

Counsel devote a great deal of their brief to the question of the guardian *ad litem*. I deem it useless to discuss this proposition at any length. He is clearly mistaken as to how the suit was brought. This case is in the name of the state of Mississippi for the use and

benefit of the two minors, Eva Mae Gillaspy and Garland Gillaspy, and Leila Gillaspy Rivers, an adult, and as to whether the name of the guardian *ad litem* appears or does not appear is wholly immaterial. This question was raised in the lower court by a general demurrer and the court very properly decided that there was nothing in the proposition, and if there was it could not be reached by a general demurrer, such a demurrer as went to the whole bill. I deem it useless to discuss this question to any great length or to cite authorities.

The demurrer of appellant went to the whole bill; certainly Mrs. Leila Gillaspy Rivers who was an adult at the time of filing the bill, had a right to maintain her action against the appellant. It would have been manifestly wrong for the chancellor to have sustained the demurrer and dismissed the bill. If appellant really desired to have the bill dismissed because J. R. Rowzee's name appeared therein, as guardian *ad litem*, a special demurrer should have been filed. If there is any merit whatever in counsel's contention on this point, he is too late, the opportune time has passed. What difference could it possibly make whether Rowzee is designated as guardian *ad litem* or next friend. Appellants cannot possibly suffer by reason of him being designated as guardian *ad litem;* if he was designated as next friend he would be under no bond.

The question of the liability of appellant and the question of the guardian *ad litem* are the only questions argued in appellants' brief and I assume that they have abandoned all other questions, if there be any shown by the record.

*Byrd & Wilson,* for cross-appellants.

At the time the new bond was executed and up to the time shortly prior to his death, the said Gillaspy was amply able to pay all sums due these minors, and could have been made to pay them had he been compelled to

do so.  No other sensible conclusion can be reached touching the liability of the surety on the last bond for the entire loss due said minors than that the estate was squandered and lost after the new bond was given, and was so squandered and lost because the said guardian did not comply with the obligations of his bond and the law in accounting faithfully to the court for his conduct in the administration of the said estates.

To sustain this contention, we have only to cite the court to the authorities in the brief filed for the benefit of the said minors by appellee and cross-appellants in this cause.

See Sec. 2407, Code 1906, Sec. 2190, Code 1892, as compared to similar sections of Code of 1871 and 1880. *McWilliams* v. *Norfleet,* 60 Miss. 987 and 63 Miss. 183 as well as the Alabama cases and notes thereunder, relied on by counsel for direct appellants, support our contention.

The contention that the guardian converted the estate of the wards to his own use by placing the check received for timber in the bank to his own credit and drawing the same out on his individual check, is wholly untenable for the reason that he comes into court after that and files his inventory, and is charged up with the full amount due each of said wards on account of the said timber.  Then, too, the check was made payable to him individually, he having an interest in the said timber; and if he placed the same in the bank to his own credit, as he had a right to do, then he had an equal right to check it out in his own name.

The proof is overwhelming that the sureties on the first bond required a regular accounting to be made to the court and that the surety on the last bond failed to do so.  Also the surety on the last bond made an investigation of the solvency of the said guardian, and of the condition of the said estate at the time the new bond was executed and with full knowledge of the facts, it

executed a bond in a sum sufficient to cover the entire estate. Also, that the said guardian was amply able at the time the new bond was given to have made full and complete settlement with each of said minors, had he been required to do so by the court or by the surety on the last bond; and not having made any effort to have a proper accounting made to the court or a proper settlement made with said minors, as required by law and by the obligations of the new bond, the said Aetna Indemnity Company is liable for the entire loss, and the chancellor's finding in this cause should therefore be affirmed.

MAYES, C. J., delivered the opinion of the court.

On the 27th day of June, 1899, G. M. Gillaspy was appointed as guardian of his three minor children by the chancery court of Newton county. At the time of the appointment there seems to have been very little personal estate for him to take charge of, and the court required only a five hundred dollar bond to be executed for each child. It appears that each of these bonds had the same sureties. It appears that, after the guardian assumed the duties as such, he paid little attention to his accounting with the court for a long while, and there seems not to have been much necessity for the same, since little money came into his hands which required accounting to the court, and the. court itself seems to. have made some orders excusing the guardian from accounting. None of these things become of importance in deciding this case, so we give this only passing notice.

In December, 1905, the guardian received for each of the wards seventeen hundred, twelve dollars and thirteen cents, as the proceeds of the sale of their interest in certain timber sold to a lumber company. The validity of this sale is not drawn in question. When this amount due each ward was received by the guardian, he was only

under a bond of five hundred dollars to each ward, and, although the guardian filed an inventory in the court on December 25, 1905, reporting the sale, and disclosing that on December 1, 1905, he had received for each of his wards the amount of seventeen hundred, twelve dollars and thirteen cents, the court did not at that time require any additional bond, although the guardian's report showed that he held three times as much money for his wards as his bonds covered. On May 13, 1907, nearly eighteen months after the filing of the inventory showing the sale of the wards' property, and when this amount had been in possession of the guardian since December 1st under the five hundred dollar bonds, it appears that an application was filed by the sureties on the first bonds, seeking to be released therefrom, and the court made an order that the sureties on the first bonds be relieved from further liability, and that a new bond be executed, which was accordingly done on the 13th day of May, 1907. This new bond was executed in the sum of six thousand dollars, and was given as a security for all three of the children. Accordingly, after the execution of the new bond, the guardian, without ever having made any settlement of his accounts up to this time under the old bond, was continued as guardian under this bond until some time in 1910, when he died.

It indisputably appears that when the guardian sold the timber to the lumber company, in December, 1905, he received therefor the sum of twelve thousand, four hundred dollars, one-seventh of which, or the sum of seventeen hundred, twelve dollars and thirteen cents, belonged to each of the wards. It further appears that the whole amount, including the minors' interest, was deposited in the Bank of Decatur to the individual credit of G. M. Gillaspy, then engaged in a mercantile business, and all of said money was checked out to pay for the different indebtedness and for investments in conducting the business in which Gillaspy was engaged at the time, and

that this was done between December 1, 1905, and May 13, 1907, the date of the new bond. In other words, Gillaspy took this whole sum and treated it as his own, and converted it to his own use and disposed of it prior to the giving of the second bond, and that he had not only done this, but that he had overdrawn some four thousand dollars. While the record unquestionably shows that while acting under the first bonds he had converted to his own use the money belonging to his wards, it also appears that on May 13, 1907, when this bond was executed, Gillaspy was still solvent and worth several thousand dollars more than was due his wards. Therefore, when he executed this second bond, he was indebted to his wards for the amount of money which he had converted, and he was amply able to have paid their claim. It appears that in the latter part of the year 1909, and nearly two years after the giving of the second bond, and without ever having made any accounting to the court of the money of the wards previously converted by him, Gillaspy became insolvent, and in the early part of 1910 was put into bankruptcy, dying about May of the same year.

After his death a suit was instituted by J. R. Rowzee, in behalf of the wards and describing himself in the suit "as guardian *ad litem.*" This suit is instituted in the chancery court against the bondsmen on both bonds, seeking to hold both sets of sureties liable. The case was heard, and the chancery court held that the second bond alone was liable for the indebtedness due by the guardian to the wards, and dismissed the suit as to the sureties on the first bonds. From this judgment the Indemnity Company prosecutes a direct appeal, and the so-called "guardian *ad litem*" prosecutes a cross-appeal. The bond company contends that the first bond is liable alone, and the "guardian *ad litem*" claims that both bonds are liable. The question is whether or not the first bond is liable to the exclusion of the second, or

whether or not the second bond is liable to the exclusion of the first, or whether both bonds are liable. It appears that the total sum due all the wards is over eight thousand dolars; more than the total amount of both bonds; the second bond being for six thousand dollars and the first three bonds each being for the sum of five hundred dollars. We want to emphasize the fact that, although it appears that the actual conversion of the property by the guardian took place while he was acting as guardian under the first bonds, yet at the time the second bond was given, and for nearly two years after the guardian entered upon his duty as guardian under the second bond, he was solvent, and the amount due the wards could have been made out of him at any time up to the latter part of 1909.

It appears from the record that the sureties on the first bonds applied to the court, under the authority of Sec. 2407 of the Code of 1906, authorizing the court, on petition of the sureties, to require the guardian to execute a new bond. It is practically conceded on both sides that this petition was filed, and that the court required the execution of a new bond. No question is raised as to the validity of the court's action in this regard. The order is made by the court on the 13th day of May, 1907, and recites that "it is ordered by the court that the sureties be relieved from further liability on said bond, and that the new bond be recorded." From the order made by the court it plainly appears that a new bond, and not an additional bond, was taken, and it is also plain that this new bond was intended to be a security for further and not past derelictions of duty on the part of the guardian. In the case of *State* v. *Shackelford,* 56 Miss. 648, this court held that a guardian's bond had no retrospective operation, unless such bond plainly indicates an intention that it should have a retrospective effect. To the same effect are the cases of *Lewenthal* v. *State,* 51 Miss. 645; *State* v. *Hull,* 53

Miss. 626; *McWilliams* v. *Norfleet,* 60 Miss. 987; *McWilliams* v. *Norfleet,* 63 Miss. 183.

In view of the above decisions, and since it is plain that the guardian converted the funds of the wards to his own use while acting as guardian under the first bonds, it must follow that appellant is not liable on its bond for the actual conversion of the funds; but the first bondsmen are, and the court erred when it dismissed this suit as to them.

This breach having occurred while the first bonds were current, those bonds are liable to all damages that accrue to the wards on account of that breach; but this conclusion does not result in releasing the sureties on the second bond. The amount of both bonds is not sufficient to make the wards whole, so there can arise in this case no conflicting rights as between the bondsmen themselves, or as to their liability between themselves. While the court held in the case of *McWilliams* v. *Norfleet,* 63 Miss. 183, when it was before the court for the second time that the new bond of a guardian was prospective, and not retrospective, it also held that a guardian's bond "imports responsibility for losses occasioned by negligence or inattention, as well as for the corruption, of the guardian. It cannot be that a breach of the first bond confers any immunity upon the sureties on his second bond for an infraction of the latter. They are liable not only for money and assets of the wards' estate which 'actually came into his hands' after the second bond was executed but, also for such as he might and could have collected and reduced to possession by a faithful administration of his office. Any other doctrine would be a novelty in the law in relation to guardians and trusts." And the court further holds that it is the duty of a guardian, whether acting under a first or a second bond, to "exercise reasonable care and diligence in the management of the wards' estate, to collect debts and securities belonging to the estate, and to administer the

trust confided to him for the benefit of the wards, and not for the advantage of himself.'' In the *McWilliams case,* 63 Miss. 183, after declaring the above rule of law, the court held the second bond of a guardian liable for the failure of the guardian to collect from himself and partners, while solvent, a note which was lost to the wards on account of this neglect and the subsequent insolvency of himself and partners, although it appeared that the improper dealings with the fund of the wards took place under a former bond. This rule was declared in the cases of *Crump* v. *Gerock,* 40 Miss. 765; *Banks* v. *Machem,* 40 Miss. 256; *Moffatt* v. *Loughbridge,* 51 Miss. 211, and in *Ames* v. *Williams,* 74 Miss. 404, 20 South. 877. The law announced by the above cases is the universal law, so far as we have been able to ascertain it.

When this second bond was given, although the actual conversion of these wards' property had taken place under the first bond, the guardian was solvent and fully able to pay the amount then due the wards. The amount was lost to them because the guardian failed and neglected to pay over the amount to them as he should have done, and it was because of this neglect that they lost their money. It is true that in this case it was a debt owing by the guardian to the wards and not the debt of a third party. It is also true that the neglect of the guardian was the failure to pay over for the wards, while he was solvent, and from himself, a sum of money which he had converted, and which belonged to them. But this fact can not affect the legal principle. The duty imposed by law for him to protect his wards from loss by neglect to exercise reasonable diligence to collect debts owing to them, rested more heavily upon him when he was their debtor by his own wrongful act than it would if he had merely failed to collect a debt from some third party. Under these circumstances the law would hold his bondsmen liable under a state of facts

101 Miss. 46

that might · exculpate them under other circumstances. A rule of law that would exculpate a guardian for failing to collect from himself when he had wrongfully converted the funds of his ward, merely because the debt was owing by him and he as an individual would have to make the payment to himself as guardian, would be a perversion of the right, and we apprehend that no court will ever so hold. Of course, it must appear in every case that the guardian was solvent and could have been made responsible during the currency of the second bond. In short, it must be shown that the wards have actually suffered loss by reason of the neglect. If it were shown that the guardian was insolvent, and that at no time during the life of the second bond could the amount have been collected, the second bond would not be liable for the neglect, because no damage was done by it.

In the case of *Johnson* v. *Hicks*, 97 Ky. 116, 30 S. W. 3, the court held· that, ''if one was solvent when he quali·· fied as guardian, a note then due from him to the wards' estate will be treated as cash assets, rendering the sureties on his bond liable for the amount of the note,'' if he subsequently becomes insolvent without having paid the ward the amount due him, the bond is liable for this failure on the part of the guardian to do his duty and collect the debt, and, of course, it can make no difference whether the debt due the ward is a note or on open account. The evidence of the indebtedness does not affect, in any way, the liability of the bondsmen for. same. So, also, in the case of *U. S. Fidelity & Guaranty Co.* v. *State*, 40 Ind. App. 136, 81 N. E. 226, it is held that ''where one is appointed guardian of a minor's estate, who at the time of assuming the trust is personally indebted to the estate, the guardian must pay the debt, separate the amount of it from his own funds, and invest it for the benefit of the ward, if he be solvent at the time, and his failure to so invest it is a conversion of that

amount of the ward's funds to his own use, and the bond is liable." See, also, *State* v. *Gregory,* 119 Ind. 503, 22 N. E. 1; *Sargent* v. *Wallis,* 67 Tex. 483, 3 S. W. 721; *Mattoon* v. *Cowing,* 13 Gray (Mass.), 387; *McGill* v. *O'Connell,* 33 N. J. Eq. 256; *Martin* v. *Davis,* 80 Wis. 376, 50 N. W. 171.

There was a breach of both bonds and the amount adjudged to be due the minors absorbs both bonds. Both having been breached during the currency of each, neither had a right to complain that both are made liable for the breach that occurred during the currency of each bond. Both are independently and separately liable in the full penalty, since the damage done to the wards exceeds the penalty of both. The burden that either bond is made to bear is neither lessened nor increased by the fact that the other is also liable for a different breach of faith in regard to the preservation of the same fund. Both bonds were given to make secure the funds, and, if it takes them both to do that for which they were given, neither has any ground of complaint. If no second bond had been given, the first would have been liable, because the actual conversion had taken place during its currency. If the money had simply been owing the guardian from a third person, and had been lost to the wards by the neglect of the guardian, the second bond would have been liable; and this is just what occurred, except that the debtor was the guardian himself.

But it is further argued that this suit cannot be maintained, because brought by Rowzee as "guardian *ad litem,*" and not as next friend. In answer to this argument we have only to say that where a minor's interests are at stake, and when the record shows that a person instituting a suit is in reality acting as the "next friend" of the minor, this court willl not look with critical eyes on the characterization which the next friend chooses to give himself in the pleadings. We shall treat him as

in truth what he is, the friend of the minor, and trust to the sound judgment of the infant's court to require of him the full discharge of his duty to the minor, by whatever name such person chooses to designate his representative character.

It follows that this case is affirmed on direct appeal, and reversed on cross-appeal, with direction to enter judgment here on cross-appeal against the sureties on the first bond for the full penalty of the bond.

So ordered.

*Affirmed on direct appeal.*
*Reversed on cross-appeal.*
*Suggestion of error filed and overruled.*