AMERICAN BONDING CO. OF BALTIMORE, MD., v. FOUNTAIN.

(No. 5877.)

(Court of Civil Appeals of Texas. San Antonio. June 13, 1917.)

1. GUARDIAN AND WARD ☞175—BOND—DEFAULT BEFORE EXECUTION.

The surety on a guardian's bond is not liable for a misappropriation before its execution, not being made so by its terms.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 600–606.]

2. EVIDENCE ☞54 — PRESUMPTION ON PRESUMPTION.

Pyramiding surmises and presumptions is not permissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74.]

3. GUARDIAN AND WARD ☞182(6)—SURETY—MONEY IN GUARDIAN'S HANDS—EVIDENCE.

Regarding liability of surety on guardian's bond, any presumption that money presumed to have been received by guardian before giving of bond, under sale approved by court, continued in his possession till it was given would be overcome by conjecture from fact proved that between such dates the guardian had no money of his own, and spent for his own use approximately the amount of such purchase money.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 654–657.]

4. GUARDIAN AND WARD ☞182(6)—SURETY—LIABILITY FOR NOTES—EVIDENCE.

Any presumption that a guardian had notes belonging to the ward established no liability against his surety, an outstanding debt belonging to the ward not being assets in the guardian's hands to charge him; negligence or fraud not being shown.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 654–657.]

5. HOMESTEAD ☞142(1)—LIABILITY FOR ANCESTOR'S DEFAULT AS GUARDIAN.

Homestead descending from father to children cannot be offset by surety on bond of father as guardian of children; but otherwise as to all other property so descending.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 271–273, 277–280.]

6. GUARDIAN AND WARD ☞173—SURETY—INTEREST AFTER GUARDIAN'S DEATH.

Regarding liability of surety on guardian's bond, no interest can be charged against guardian after his death.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 576–588.]

Appeal from District Court, Brazos County; J. C. Scott, Judge.

Action by J. L. Fountain, guardian of Charlotte Sanders and others, against the American Bonding Company of Baltimore, Md. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Doremus, Butler & Henderson, of Bryan, for appellant. J. G. Minkert, of Bryan, for appellee.

SWEARINGEN, J. This is a suit by appellee, J. L. Fountain, guardian of the persons and estate of minors, against the appellant, a surety on the bond of a prior guardian, the father of the minors, for a devastavit of $3,-

000, committed by the father as guardian during the life of the bond sued upon. The suit was tried by the court without a jury, and judgment was rendered against the defendant surety for $1,500, the penalty limited by the bond.

Appellee substantially alleged the appointment of the father as guardian and the execution of the bond by the appellant; alleged that $1,500 cash and $1,500 in vendor's lien notes belonging to the estate were in the hands of the guardian at the time the appellant's bond was executed and accepted; that this $3,000 was misappropriated by the guardian while the bond was in force; that the guardian was dead and his estate insolvent. Appellant answered by plea in bar, general demurrer, special exceptions, and general denial, and, liberally stated, specially answered that no waste occurred; that the misappropriation, if any, occurred during the life of the first guardian's bond, given July 20, 1909, on which appellant was not a surety; that the second bond, on which appellant was surety, was executed July 20, 1910; that no part of the $3,000 was in the hands of the guardian at the time the second bond was executed nor afterwards, and no misappropriation made thereof while appellant's bond was in force. Appellant alleged that valuable assets were received by the minors by inheritance from their deceased father's estate, the value of which should be allowed as an offset against any liability that might be adjudged against appellant.

The facts are that after the death of the mother of the minors, their father, J. D. Sanders, qualified as guardian of the persons and estate of his minor children, and as such received 24 acres of land and some other property not alleged to have been wasted, belonging to the minors by virtue of inheritance of their mother's separate estate. As said guardian, Sanders executed a bond dated July 20, 1909, but appellant was not a surety on that bond. On July 31, 1909, the guardian filed application to sell at private sale the 24 acres of land, fully described in the application. The court ordered the sale. The guardian reported to the court that the sale was made October 19, 1909, for $3,000. One-half, or $1,500, to be paid in cash and balance secured by three vendor's lien notes of $500 each, bearing 8 per cent. interest from date of note October 19, 1909, payable annually; the first note to mature October 19, 1910, the second, October 19, 1911, the third, to mature October 19, 1912. This sale was by the court confirmed and guardian ordered to make the deed and receive thereafter the cash payment and the three notes. There is no evidence that the deed was ever made or that the cash was ever received by the guardian. There is no evidence that the three notes mentioned were ever executed by the purchaser or received by the guardian. On the 10th day of November,

1908, prior to petition for guardianship, J. D. Sanders bought 243 acres of land for $6,000. He paid therefor $2,000 in cash and executed his three promissory notes for the unpaid portion of the purchase price. The first note was for $1,500, with 8 per cent. interest payable annually, and matured January 1, 1910. The second note was also for $1,500, interest same as first, and matured January 1, 1911. The third note was for $1,000, and matured January 1, 1912. All three of the notes were secured by vendor's lien. Sanders made his home on this land thus purchased, and continued to use it as his homestead until his death July 12, 1911. Sanders left little property besides the homestead and $710 in money. Whether this was one-half or all of the money left by Sanders is left uncertain. On July 20, 1910, the guardian executed a new bond, with appellant as surety. The first bond was canceled by order of the court upon proper application and the new one ordered, which second bond is the basis of the suit before us. The deed from Castle to Sanders, conveying the land subsequently used as homestead, recites that the first note for $1,500 with interest was due January 1, 1910. A release of the two vendor's lien notes for $1,500 each was executed by the payee in the notes, and is a link in the chain of title of the minors to the homestead. That release was introduced in evidence. The release states that J. D. Sanders paid the $1,500 and interest due January 1, 1910, on that date, January 1, 1910. The release was executed in 1912. The evidence does not disclose that Sanders had any money of his own with which to pay the note on January 1, 1910. The record does show that Sanders sold the property of his minors on the 19th of October, 1909, and was ordered by the court to make a deed and thereupon receive $1,500 in cash and three certain notes. On November 29, 1909, Sanders bought an interest in a small piece of land and paid $175 for it.

For convenience, we will give our view of the law of this case as made by the facts of record first, and will give such detailed treatment of the various assignments as may be necessary later.

[1] Appellant executed the second bond, which became effective July 20, 1910, and by the terms of that bond became liable only for prospective misappropriations. Moore v. Hanscom, 103 S. W. 669; Freedman v. Vallie, 75 S. W. 322; Love v. Keowne, 58 Tex. 200; Cole v. Crawford, 69 Tex. 127, 5 S. W. 646; Hetten v. Lane, 43 Tex. 288; Barry v. Association, 67 Tex. 250, 3 S. W. 261; Ætna Indemnity Co. v. Gallaspy, 101 Miss. 703, 57 South. 980, 39 L. R. A. (N. S.) 961, and note; 2 Brandt, Guaranty and Surety, § 654; 12 Ruling Case Law, § 52.

In view of this rule of law, it is important to ascertain from the evidence when the $1,500 cash from the sale of the wards' land was

actually received by the guardian and exactly when it was misappropriated. If misappropriated prior to execution of the second bond, there can be no liability against the appellant surety on that bond. Id. There is no direct evidence that the guardian actually did receive the $1,500 at any time. In obedience to the order of confirmation of sale, the guardian should have executed a deed to the land and received the $1,500 cash October 19, 1909. Whether he did or not is left unanswered by the evidence. The purchaser may have failed to pay the money, and may not have received the deed. But presuming that the guardian did deliver the deed and did receive the $1,500 in cash on October 19, 1909, the next inquiry is, What did he do with the money? As guardian, he was required to invest the money upon a formal order of the probate court. Moore v. Hanscom, 101 Tex. 300. There is no evidence of such an order or investment. From the record it may be conjectured that the guardian may have received the $1,500 October 19, 1909.

The record does not disclose that Sanders, the guardian, had any money or property of his own at that time other than his homestead and other property of small value. The evidence discloses that on November 29, 1909, Sanders paid $175 for land for himself, and that on January 1, 1910, he paid the $1,500 Castle note and two years' interest at 8 per cent., amounting to $240. These payments, aggregating $1,915, made by Sanders for his own benefit, within two months of the time he should have received the $1,500 cash for his wards, coupled with the fact that Sanders is not shown to have had any money of his own at that time or later, creates a surmise that he did collect the $1,500 for his wards, and that surmised fact creates the inference that he misappropriated that same money by investing it, without an order of court, in land, and by having the title to that land put in him individually, and not as guardian. If the guardian did collect this money for his ward in October, 1909, and did use it for himself in November, 1909, and January 1, 1910, the misappropriation occurred during the life of the first bond, made July 20, 1909, and prior to the execution of the second bond, which did not become effective until July 20, 1910.

[2] There is no evidence that the guardian had this $1,500, which he may have collected in October, 1909, for the wards, on hand or in his possession on July 20, 1910, when the appellant bound itself by the second bond. Appellee evidently relies upon the presumption that moneys that may have been collected on October 19, 1909, were still in the possession of the guardian July 20, 1910, and that the burden rested upon appellant to overcome this presumption by proof of a prior misappropriation. Hetten v. Lane, 43 Tex. 288, 289. This presumption that the guardian had the money July 20, 1910, when the second bond was made, because it was surmised that he collected it in October, 1909, surmised because presumed that the guardian executed and delivered the deed in accordance with the confirmation of sale, seems to be a case of piling surmise upon a surmise, itself piled upon a presumption. Such pyramiding of surmises and presumptions is not permitted by law. Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064; Moore v. Hanscom, 103 S. W. 673; Lawson on Presumptive Ev. 569, rule 118.

[3] Moreover, the presumption that the guardian had in his possession in July, 1910, his wards' money, which he should have collected in October, 1909, is destroyed by the proven fact that the guardian had no money of his own during that time and yet between October 19, 1909, when he should have collected the wards' money, and January 1, 1910, about two months, he spent for his own use $1,915. These proven facts authorize the inference that Sanders misappropriated his wards' money November 29, 1909, and on January 1, 1910, long prior to the time when appellant's bond became effective. The facts in evidence are sufficient to destroy the presumption that the money was on hand when the bond of July 25, 1910, took effect.

We must therefore hold that the evidence fails to show that the misappropriation was made during the life of the bond signed by appellant. It appears more than probable that the misappropriation actually occurred while the first bond was in force, but this is only a plausible conjecture, sufficient, however, to destroy the presumption, which, being destroyed, leaves the case without any evidence of record to sustain the trial court's finding of fact that the guardian had the $1,500 on hand when the appellant's bond took effect, and leaves appellee's allegation to that effect without the support of any evidence.

To repeat, the direct testimony shows that the guardian was going after the $1,500 cash, and was going in "good form," but fails to show he actually got it. The testimony next shows the guardian with no money of his own, paying out $1,915 in cash in one and two months after the date he was found in pursuit of his wards' money. This fact that the guardian had approximately the sum he expected to get for his wards may justify the inference that he actually got his wards' money at the time we lost sight of him going after it. If this inference is indulged, and it therefore be conceded that the guardian received his wards' money because found later with the money, then it follows absolutely and necessarily that he misappropriated his wards' money by buying with that money land for himself. These purchases occurred prior to the execution of the appellant's bond.

[4] This disposes of the alleged misappropriation by the guardian of the $1,500 cash

during the life of appellant's bond, but leaves undisposed of the allegation of misappropriation of the three notes for $500 each, dated October 19, 1909, and payable October 19, 1910, 1911, and 1912, respectively. The allegation is that the guardian had these three notes in his possession on July 20, 1910. The statement of facts wholly fails to show that such notes were ever made or ever delivered to the guardian. If any such notes were made and delivered, as contended by appellee, they may have been made to Sanders individually. There is no proof of this; it is merely a conjecture, while appellee's contention may be classed as an inference. But it is useless to discuss the relative value of conjecture and inference, because the record fails utterly to show that Sanders ever at any time collected any of the three notes or any part of them; and, until collected, these notes cannot be charged against the guardian who was the principal on the bond; consequently cannot be charged against the surety on the bond. The rule is thus announced in Townsend v. Munger, 9 Tex. 312:

"An outstanding debt due to the decedent is not assets in the hands of his executor or administrator to charge him, where there has not been gross negligence, or the delay in collecting it has not been collusive, fraudulent, or unreasonable."

From this rule thus stated it follows that the presumption that the guardian had the three notes on hand July 20, 1910, when appellant's bond became effective, fails to establish a liability against the surety on that bond, for the reason that the guardian cannot be charged with the value of the notes; negligence or fraud being neither alleged nor proven. Especially would that rule apply to the facts of this case, because two of the notes did not mature until long after the death of the guardian, which occurred July 12, 1911, whereas the second note did not mature until October 19, 1911, and the third October 19, 1912.

The evidence wholly fails to sustain the allegation that the guardian misappropriated the value of the three notes during the life of appellant's bond.

The foregoing opinion is based upon the propositions presented to us by the sixth assignment of error, which, being sustained, necessitates the reversal of the judgment. Because it appears that the evidence was not fully developed on the trial, and appears probable that it can be, the cause will be remanded.

[5] The fourth assignment charges the court with error because it did not allow the value of the homestead inherited by the minors from their father's estate as an offset against the charges by the minor against their father for devastavit while guardian of their estate. This assignment is overruled.

The Supreme Court, in the case of American Bonding Co. v. Jessie Logan, 106 Tex. 306, 166 S. W. 1132, has definitely announced the rule that the homestead inherited by the heirs of the guardian cannot be used to offset a liability of the guardian and his surety for devastavit of the wards' estate by the guardian, even though the guardian was the father of the wards, where the homestead continues to be used after the death of the father, by the widow and minor children as in this case. It is also the rule that all property left by the guardian, except the homestead, descends to the heirs charged with his debts, and should be used to offset any liability of the appellant.

The first, second, third, fifth, eighth, ninth, tenth, eleventh, eighteenth, nineteenth, and twentieth assignments are overruled without discussion because the merits of the propositions thereunder do not justify further elaboration.

The seventh assignment cannot be considered because it violates the rules prescribed for this court.

The twelfth, thirteenth, fourteenth, fifteenth, and sixteenth all present rulings of the court upon matters within its discretion, and no errors will probably be again made in reference thereto upon another trial, for which reason we overrule them.

[6] The seventeenth assignment is sustained. This assignment is that the court erred in concluding as law that the highest legal rate should be charged against the guardian from the time of collecting his wards' money in 1909 until the date of trial in 1913, notwithstanding that the guardian died July 12, 1911. No interest can be charged against the guardian after his death. Freedman v. Vallie, 75 S. W. 322.

Reversed and remanded.