## DOUGLASS v. KESSLER ET AL.

1. **Guardian:** ADDITIONAL BOND: LIABILITY OF SURETY. Where a guardian filed a new bond with sureties, but was not discharged or re-appointed, nor were the sureties on the old bond discharged, and the evidence failed to show whether he then had the money previously received, or had misappropriated it; *held*, that such bond was an additional or cumulative security for the entire guardianship; and that the obligors thereon were liable for the entire defalcation.

*Appeal from Dubuque Circuit Court.*

MONDAY, OCTOBER 24.

IN 1866 R. G. Bishop was appointed guardian of the plaintiff, who was then a minor, and he gave bond as provided by law. In January, 1873, a citation was issued, requiring Bishop to show cause why he should not file a new bond, because the surety on the old bond was not a resident of the State, and was not worth the amount of the bond. On the 29th day of said month Bishop, in pursuance of an order of the court, gave such bond—the one sued on. In January, 1875, a petition was filed asking the removal of Bishop, and on the 16th day of said month the court made an order, "that R. G. Bishop, the present guardian be and is hereby discharged as such." Hubert O'Donnell was thereupon appointed guardian of said minor. Shortly afterward Bishop filed a motion to set aside the appointment of O'Donnell, and on the 21st day of April the court sustained the motion, the order being, "the appointment of Hubert O'Donnell is set aside." Nothing ever came into the hands of O'Donnell. The record fails to show Bishop was reappointed, but he seems to have regarded himself as guardian, and he was recognized as such. Bishop is dead, but the time of his death is not shown. During his lifetime there came into his hands $643.42 more than he accounted for, a part of which was received before the bond sued on was executed. Judgment was rendered for $643.42 and interest. The defendant appeals.

*D. J. Lennehan*, for appellants.

*W. J. Cantillon*, for appellee.

SEEVERS, J.—An opinion in this cause was filed at a former term. Both parties asked, and there was granted, a rehearing. We have re-examined the whole case, being aided therein by additional arguments of counsel, and have reached the following conclusions.

1. GUARDIAN: additional bond: liability of surety.

I. As to the money which came into the hands of Bishop before the bond sued on was executed, the order of the court was as follows: "It appearing to the court that the present bond is insufficient, and additional bond necessary, it is therefore ordered by the court that said R. G. Bishop file bond with sureties, to be approved by the clerk of this court, in the penal sum of $1,000, to be filed by the 5th day of April, 1873." In pursuance of this order the bond sued on was filed. The sureties on the old bond were not, nor was Bishop, discharged or reappointed. He continued to act under the original appointment. The intent of the court undoubtedly was that an additional bond or security should be given. There is nothing on the face of the bond showing it should not be so regarded. The only condition being that Bishop should faithfully "discharge all the duties imposed upon him by law." The evidence fails to show whether Bishop held the money previously received or whether he had misappropriated it. Under such circumstances, we understand the rule to be that the sureties on the additional bond are liable for the default of the guardian previous to the filing of such bond. *Loring v. Baker* 3 Cushing, 465; *Bell v. Jasper*, 2 Ird. Eq., 597; *Jones v. Blanton*, 6 Ib., 115; *Hutchcraft v. Shrout*, 1 Mon., 206; *Ammons v. The People*, 11 Ill., 6; Brandt on Suretyship and Guaranty, § 463, and authorities cited. There is no statute in this State preventing the application of this rule, and there

cannot be any "legal objection to the filing of several similar bonds by a guardian, with a single surety on each, instead of one joint bond with joint sureties." It was the duty of Bishop to faithfully account for all the money he had received and the defendants became his sureties that he would do so. Because he has failed they are liable. If Bishop had been reappointed and entered upon a new term it may be it could be properly said the sureties should be held only for the defalcations occurring during such time. The new bond "was not intended to operate as collateral security or prospectively only." The least that can be said of it is that the obligors intended that it should operate as an additional and cumulative security to the ward for the entire guardianship of Bishop. *Bell v. Jasper*, before cited.

II. The next question is did any of the money come into the hands of Bishop after he was discharged and O'Donnell appointed? The only evidence bearing upon this question is the reports of Bishop made to the court. A careful examination of the abstracts satisfies us that the last money received by Bishop was in December, 1874, and he was not discharged and O'Donnell appointed until January 16, 1875. It follows the defendants are liable for the whole defalcation.

AFFIRMED.