ROBERT BROOKE, Guardian, et al., Appellees, v. AMERICAN
SAVINGS BANK OF MUSCATINE, Administrator, Appellee;
FEDERAL SURETY COMPANY, Appellant.

NOVEMBER 15, 1927.

OPINION ON REHEARING FEBRUARY 12, 1929.

*Cook & Balluff* and *Harold Hodges,* for appellant.

*Bollinger & Block* and *Robert Brooke,* for appellees.

WAGNER, J.—In February, 1903, Kirk Milnes was appointed guardian of the property of Abel Milnes, Jr., an incompetent, and qualified as such guardian by giving bond in the sum of  $4,000, which bond was signed by Abel Milnes, Sr., the father of the ward. The surety on the aforesaid bond died in February, 1919, and the ward inherited from his father the sum of $16,830, which amount was paid to the guardian subsequent to February 23, 1920, on which date the guardian executed and filed with the clerk of the district court a new bond in the amount of $25,000, with W. J. Moore and Joseph Kingsbury as sureties. On October 13, 1923, the guardian executed another bond in the sum of $30,000, with the defendant Federal Surety Company as surety, which bond, on the 22d of October, 1923, was filed with and approved by the clerk of the district court. At no time did Moore or Kingsbury, the former sureties, by petition ask to be relieved from their obligation as sureties on the $25,000 bond. On October 24, 1923, there was entered of record in said guardianship the following order:

"Now on this 24th day of October, 1923, it appearing to the court that Kirk Milnes, guardian of said Abel Milnes, Jr., incompetent, having filed a surety bond in the sum of $30,000 executed by the Federal Surety Company, the same is hereby accepted. It is further ordered by the court that said guardian be, and he is hereby, ordered to file a report with this court before the sureties on the old bond are by the court released."

On December 6, 1923, the guardian filed what is designated "Eighth Report of Guardian," wherein he states that he has furnished a bond with the Federal Surety Company as surety, which bond has been accepted and approved by the clerk of the court, and that, in order to show the condition of the estate of his said ward at the date of the substitution of the said Federal Surety Company in place of his original bondsmen, he files this report of his doings in said estate since the date of his last report, to wit, the 14th day of April, and up to the date of the execution of said new bond, to wit, the 13th day of October, 1923. On the following day, there was entered of record the following order:

"Now on this 7th day of December, 1923, this matter comes

on for hearing upon the eighth progressive report of Kirk Milnes, guardian of Abel Milnes, of unsound mind; and, the court having examined said report, and being fully advised in the premises, it is therefore ordered by the court that the final report under the old bondsmen and accounting up to October 13th be, and the same is hereby, approved."

On December 29, 1923, there was entered of record the following additional order:

"Now on this 29th day of December, A. D. 1923, this matter comes on for hearing before the court for the release of old bondsmen, and it appearing to the court that the guardian having filed in this court on October 22d a bond of the Federal Surety Company, it is therefore ordered by the court that the old bondsmen, W. J. Moore and Joseph Kingsbury, be and they are hereby released and discharged as such."

Kirk Milnes, the former guardian, died December 9, 1924, and the defendant American Savings Bank of Muscatine is the regularly appointed, duly qualified, and now acting administrator of his estate. Upon the death of Kirk Milnes, the plaintiff Robert Brooke was appointed guardian of the property of the ward, and with the authority of the court, he brings this action to recover on the bond. Shortly after the commencement of this action, the ward died, and J. E. McIntosh was appointed and qualified as administrator of his estate, and he joins as a party plaintiff herein.

The case was tried to the court, without a jury, on an agreed stipulation of facts. At the conclusion of the trial, the court rendered judgment in favor of the plaintiff and against the Federal Surety Company in the sum of $23,030.70, with interest and costs. From this action by the trial court, the defendant Federal Surety Company appeals.

In the former guardian's written application to the appellant for the bond, appear the following questions and answers: "Are you indebted to the estate?" "Yes." "If so, give particulars." "Mtg. of $18,000 described above." At the time of the trial, the parties made the following concession:

"That substantially all of the guardianship estate was appropriated to his own uses by himself [Kirk Milnes] before the

13th day of October, 1923, but this does not include a $1,000 Liberty Bond and the interest coupons attached thereto.''

. On the merits of the case, the appellant's sole contention is that the bond upon which it is surety is a ''substitute bond,'' and that it is not liable for any defalcation or devastavit which occurred prior to the date of its execution.

We will first inquire as to whether or not the bond executed by appellant as surety is or can be, under the law, a ''substitute bond.'' Unless the liability of Moore and Kingsbury on the former bond for future acts of the guardian was superseded by the liability of the appellant on the bond in suit, then there was no ''substitute bond.'' The former sureties, Moore and Kingsbury, were not relieved from liability for either the acts of commission or omission by the former guardian, unless they have been legally released or discharged. In *Bookhart v. Younglove,* 207 Iowa ——, we said:

''The object of a bond is security to those who are interested in the property settlement of the estate. The law requires the bond for their protection, and the parties interested acquire a vested interest in the bond, which cannot be divested *without their consent,* except in the manner prescribed by law.''

We further said in *Bookhart v. Younglove,* supra:

''It is generally held by the courts that, where the legislature had provided a statute authorizing the release of sureties, its provisions must be strictly complied with, in order that the release may be effective. * * * 'The courts have no power to waive compliance with the statute, but the surety, in seeking to avail himself of its benefits, must comply with its provisions. * * * The proceeding to release sureties is statutory and of a summary character, requiring no notice to the parties ultimately entitled to the fund, and the statute cannot be extended, by construction, to authorize the discharge of a surety on the application of the principal in the bond, in the absence of any provision in the statute authorizing it.' * * * The courts generally declare that, where the statute provides that the surety may apply for the release, or contemplates that the initial step for obtaining release must be taken by the surety, the proceeding asking for his discharge must be on his petition.''

In so far as the present litigation is concerned, the statutory authority for release of sureties on a bond is found in Sections 1283, 1284, and 1285 of the Code of 1897, and Sections 1177-a and 1177-b of the Supplement to the Code, 1913, all of which statutory law is set out and referred to in *Bookhart v. Younglove*, supra. When the surety on a bond desires to be released, the first step toward obtaining jurisdiction for said relief is a petition by or in behalf of the surety. It is conceded in the instant case that neither Moore nor Kingsbury petitioned the court for the discharge of the bond on which they were sureties, nor for the execution of the new bond sued upon herein. Therefore, the requisite initial jurisdictional step toward the release of Moore and Kingsbury as sureties was never taken. The courts have no power to waive strict compliance with the statute. *Clark v. American Sur. Co.*, 171 Ill. 235 (49 N. E. 481). While it is true, as held in the *Bookhart* case, that there may be a valid release of sureties on a bond as to interested parties consenting to the order of discharge, yet there can be no valid order of discharge of a surety by the court without strictly complying with the statutory authority, or without the appearance by the interested parties, and their giving their consent to the order of discharge. In the instant case, the statutory authority was not complied with. The interested party was Abel Milnes, Jr., an incompetent, a person of unsound mind. On account of his disability, he could not appear and consent to the release of Moore and Kingsbury as sureties. The burden is upon the appellant to show that there is a valid release of Moore and Kingsbury, before it has established the facts upholding its contention that the bond signed by it is a "substitute bond." Under the record of this case, there has been no valid release or discharge of the liability of Moore and Kingsbury, sureties on the former bond, and we said in the *Bookhart* case:

"In the numerous authorities from other jurisdictions hereinbefore cited, it is held that, where there is an attempt to procure the release of the sureties upon the first bond, without following statutory procedure, or without the consent of the interested parties, a second bond, voluntarily given under said conditions, is only additional security."

*Taylor v. Taylor*, 66 W. Va. 238 (19 Ann. Cas. 414), and

*Central Bank. & Sec. Co. v. United States Fid. & Guar. Co.*, 73 W. Va. 197 (51 L. R. A. [N. S.] 797), are companion cases. Three surety companies signed successive bonds for the liability of the administrator. The statutory law was not complied with by either one of the two surety companies who first signed, in order to obtain their release or discharge. In the *Taylor* case, recovery was had against the surety company which executed the first bond. The court, as authority for its pronouncement in holding the first surety, quotes from 2 Brandt on Suretyship and Guaranty (3d Ed.), Section 707, which is as follows:

''The statutory method for the release of an existing surety on a guardian's bond by the substitution of a new one must be strictly pursued; otherwise the new bond is merely cumulative, and the old sureties remain bound.''

The court in said case further said, with reference to the taking of the successive bonds:

''* * * they are clearly not substitute bonds, releasing or discharging bonds antecedently given, such as are contemplated by Sections 9, 10, and 11 of Chapter 87'' (provisions of the statutory law).

In the latter West Virginia case hereinbefore referred to, the first surety brought suit against the two succeeding sureties for contribution. Each of the two later bonds contained a recital of a desire on the part of the principal therein to release the surety in the preceding one from further liability, and of tender thereof in lieu of the preceding one. The court held that the surety on the first bond was entitled to contribution from the sureties in the two succeeding bonds, the court saying:

''Being valid obligations, and yet not substitute bonds, and having been given for the same principal as the one for whom the first bond was given, and to guarantee faithful execution of the same trust, the two subsequent bonds are mere cumulative or additional bonds, and the sureties therein are cosureties with the surety in the first one.''

In *Barker v. Boyd* (Ky.), 71 S. W. 528, the statutory law for the release of the surety was not complied with, and it was held that the sureties on the second bond were liable for any default by the guardian. The court said:

"If a surety becomes uneasy, and desires to be released from further liability on the bond, * * * he must pursue the method pointed out by the statute. * * * The order releasing Pence as surety on the first bond was therefore void. He remained bound as if that part of the order had not been made. * * * And it has been repeatedly held by this court that the effect of such renewal bonds is cumulative security for the ward, and that the sureties on all of them, so far as the ward is concerned, are equally and jointly bound for all the estate coming into the guardian's hands."

Also, see the authorities cited in *Bookhart v. Younglove, supra.*

Inasmuch as there was no valid release of Moore and Kingsbury from their liability as sureties on the former bond, the law fixes the status of the appellant to be that of additional surety.

We might well stop here, as what we have already said is determinative of the case. But what as to the liability of the appellant if it be conceded, arguendo, that it is a surety on a  "substitute bond?" Under Section 1177-a of the 1913 Supplement to the Code, said bond shall be conditioned as provided in Section 1183 of the 1897 Code. It being a statutory bond, the provisions of the statute are read into it. Said bond provides:

"The condition of the above obligation is such that if the above-named Kirk Milnes, who has been appointed guardian of said incompetent, shall faithfully discharge the office and trust of such guardian according to law, and shall render a fair and just account of such guardianship from time to time, whenever thereunto required by law, and render and pay to said incompetent all moneys, goods and chattels, title papers and effects which may come to the hands or possession of such guardian, belonging to such incompetent when such shall be entitled thereto, or any subsequent guardian, should such court direct—then this obligation to be void, or otherwise to remain in full force and virtue."

In *Dugger v. Wright*, 51 Ark. 232 (14 Am. St. 48), the question was as to the liability upon two bonds, the sureties in the first bond having been legally released from future liability.

The defalcation occurred prior to the execution of the second bond. The court held that the sureties on each bond were liable for the devastavit, but that they were entitled to contribution, as among themselves. With reference to the latter bond, the court declared:

"The conversion had taken place when they signed, and the liability of the defendants, who were the former sureties, had become fixed. It required only the order of the probate court to authorize suit against them. *But the breach was a continuing one, because it was still the executor's duty to account to the probate court for the proceeds of the property; and when he failed to comply with the order of the court directing him to pay over the amount with which he had been charged on that account, the new sureties became liable, by the terms of their undertaking, to make good his default.* There are no terms in the office of executor or administrator, and the principle which is properly invoked in the case of a public officer who executes a bond for the faithful discharge of the duties of his office for the term upon which he is about to enter, is not applicable. The new bond, or the obligation of the new sureties, relates back, and the two sets of sureties are jointly liable to the distributees and others for whose benefit they have contracted, for breaches committed prior to the second execution."

In support of the foregoing doctrine, see *Knox v. Kearns,* 73 Iowa 286; *Ellyson v. Lord,* 124 Iowa 125; *Douglass v. Kessler,* 57 Iowa 63. In *Foster v. Wise,* 46 Ohio St. 20 (15 Am. St. 542), the sureties on a former bond had been released, upon the motion of one of said sureties. The principal then gave a new bond. The assets had been previously collected, and converted by the principal to his own use and benefit. The sureties on the latter bond contended that they were not liable. The court held that their contention was not tenable, saying:

"The obligation of the bond is the thing to be considered. It, among other things, stipulates that the executor 'shall administer, according to law and to the will of the testatrix, all her goods, chattels, etc., which shall at any time come to the possession of the said executor.' The discharge of this obligation required that the executor should administer the estate as required by the law and the will, or deliver it to his successor to be so

administered, should he resign or be removed. The fact that prior to executing the bond he had converted the assets to his own use in no way affected the obligation to account for all that had been received by him belonging to the estate; and it was to secure this obligation that the bond was required and given."

In *Abshire v. Rowe*, 112 Ky. 545 (56 L. R. A. 936), sureties on a guardian's bond were legally released, and a new bond executed. Subsequently, the guardian was removed, and a new guardian appointed, who brought suit against the sureties on the latter bond. Said sureties contended that they were not liable; that the assets were squandered and converted by the guardian before the execution of the bond on which they were sureties. The sureties on the latter bond were held liable for the defalcation previously occurring, the court declaring:

"As between the motioners and those executing the new bond, the motioners would be liable only for such defalcation as had occurred before its execution; but as between the other sureties on the old bond and the sureties of the new, they all stand alike, and upon the same footing. We could not conclude otherwise and be in harmony with the earlier and persistent rulings of this court upon the effect of such obligations."

For cases holding to like effect, see *Morris v. Morris*, 9 Heisk. (Tenn.) 814; *Bobo v. Vaiden*, 20 S. C. 271; *Brooks v. Whitmore*, 142 Mass. 399; *Beard v. Roth*, 35 Fed. 397; *Merrells v. Phelps*, 34 Conn. 109.

The appellant relies upon *Knepper v. Glenn*, 73 Iowa 730, wherein the court says:

"It is true that the undertaking of the surety in the bond was against the default of the guardian in the future. The conditions of the bond were not retrospective."

The bond in said case was an original bond (not a "substitute bond"), and it was the contention of the sureties that the guardian had secured possession of the funds converted, and appropriated the same to his own use, prior to the time of his qualifying by the execution of the bond upon which they were sureties. However, the court made the finding that the guardian had defaulted, and was liable to the extent of the amount named in the order, and recovery was upheld, as against the sureties.

It is manifest that said case is no authority for the appellant in the instant case.

The appellant also relies on *Bockenstedt v. Perkins,* 73 Iowa 23, wherein it is stated:

"It is true that defendants' undertaking was for the performance in the future of the duties of the guardianship. They are not responsible for any default which may have occurred before they signed the bond."

The bond in said case was an original bond, and not a "substitute bond," and the claim of the sureties was that the guardian received the money on the 13th day of October, and that he did not qualify by giving the bond on which they were sureties until the 19th day of October. However, under the facts of the case, the sureties were held liable. Thus said case is not authority for the contention of the appellant in the instant case.

By the great weight of authority, even where a so-called "substitute bond" is executed upon the valid release of the former sureties, the sureties on the latter bond are held liable for defalcation occurring prior to the time of the execution of said latter bond. The duty devolves upon the subsequent surety to ascertain to his own satisfaction with reference to the condition of the estate before binding himself as surety upon the bond. The obligation of the bond is to pay the funds of the estate to the person entitled thereto, upon the order of the court. There is no breach of this obligation until there is a failure to pay. The subsequent surety is not permitted by the law to bind himself to the performance of said duty and then say that the devastavit occurred prior to the time when he became liable on the bond. By reason of his execution of the so-called "substitute bond," the administration of the estate is allowed to continue, and in the case of an infant, may continue for years, and in the case of an incurably insane person, must continue until his death, or until all of the funds have been expended in his behalf, or a new guardian appointed. The delay for final settlement, brought about by reason of the execution and acceptance of the so-called "substitute bond," may render the one finally entitled to the estate helpless, unless the surety on the latter bond is held liable for prior defalcations. If no subsequent bond had been executed, the probability is that the administration of the estate in

the hands of the present principal would come to an end. It is true that a valid release of the former sureties only relieves them from liability for future acts (*Des Moines Sav. Bank v. Krell,* 176 Iowa 437) ; but lapse of time for the final settlement, induced by the execution of the subsequent bond, may bring about the death or a condition of insolvency of the former sureties which did not exist at the time of the execution of the latter bond. Reason and the great weight of authority impel us to hold that, although the bond may be a so-called "substitute bond," the sureties thereon are liable for defalcation occurring prior to the time of its execution.

There is still a third reason why the appellant in the instant case cannot prevail. While it is conceded that the former guardian appropriated to his own use the estate, prior to October 13, 1923, the date of the execution of the bond in suit, and while the record shows that the former guardian was insolvent on the date of his death, December 9, 1924, it is not shown that he was insolvent October 13, 1923, the date of the execution of the bond. Whatever amount Kirk Milnes owed by reason of his misappropriation of the funds was an asset which belonged to his ward. *McEwen v. Fletcher,* 164 Iowa 517; *Armon v. Craig,* 203 Iowa 1338; *In re Estate of Donlon,* 203 Iowa 1045. For reasons hereinbefore given, the appellant is liable for the prior defalcations or devastavits of the former guardian; and this is true regardless of the solvency or insolvency of said guardian at the time of the execution by appellant of the bond. This holding makes it unnecessary to inquire whether the appellant is liable in the light of the cases last above cited; but if we should so inquire, the burden would be upon appellant to establish the fact, if it be a fact, that Kirk Milnes, at the time when it assumed liability on the bond, was insolvent, and remained insolvent until the time of his death. This they have not done. See *McEwen v. Fletcher,* supra; *In re Estate of Donlon,* supra.

Before the trial the appellant filed a motion asking that Moore and Kingsbury, the former sureties, be made parties defendant, for the reason, as claimed, that a determination of the controversy between the parties before the court could not be made without their presence. The court overruled the motion, and the appellant now assigns said ruling as error. Under Section 10975 of the

Code of 1924, the plaintiff could sue any one or more of the sureties upon the two bonds. There is no necessity of the presence of the others in court for the determination of the matters in litigation between the parties to this suit. Whatever rights of contribution may exist as between the sureties is still a matter for determination as among them. There was no error at this point.

For the foregoing reasons, the judgment of the trial court is correct, and the same is hereby affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, STEVENS, and MORLING, JJ., concur.

DE GRAFF, J., dissents.

KINDIG, J., takes no part.

DE GRAFF, J. (dissenting).—I respectfully dissent from the conclusion of the majority. I realize that a dissent is of little importance in the particular case, but it may be more or less educative, and, at any rate, records the reaction of the dissenter.

This is an action on a bond against the defendant surety company only. The real party as to the liability in question is the first surety, not a defendant, and the trial court refused his being made a party. The primary question is whether the bond of the instant defendant is a substitute bond. It is my contention that the record facts and the law make it a substitute bond. The majority hold that it is an additional or cumulative bond, and for the reason that the statutory requirements as to the release of the first sureties were not made, according to statute. In my judgment, under the circumstances, it would have been an idle ceremony to require a strict performance of the statute, as there may be a waiver of notice, and there was such waiver in this case. It is necessary to outline the essential facts, before entering upon a discussion of the law.

On October 13, 1923, the bond in suit was issued by the defendant Federal Surety Company, and filed October 22, 1923. The fact is stipulated of record that Kirk Milnes, a guardian of the person and property of Abel Milnes, Jr., a person of unsound mind, prior to the date of the tender of the surety bond in suit, to wit, prior to October 13, 1923, as such guardian had squandered and dissipated or converted to his own use all of the

funds involved in the litigation. The primary question on this appeal is whether or not the defendant surety company, which is the appellant here, is liable for the devastavit or defalcation by the guardian, Kirk Milnes, prior to the giving and approval of the surety bond in suit.

Kirk Milnes was appointed guardian in February, 1903. As such guardian, he filed bond signed by Abel Milnes, Sr., the father of his ward, as surety thereon. In February, 1919, Abel Milnes, Sr., died. On February 23, 1920, Kirk Milnes, guardian, filed a new bond in the sum of $25,000, on which W. J. Moore and Joseph Kingsbury were sureties. Prior to the time of the filing of this bond, the first bond was sufficient to meet the requirements of the statute; but on the death of the father, Abel Milnes, Sr., the ward inherited the sum of $16,830, which was paid to Kirk Milnes as guardian. On October 13, 1923, the Federal Surety Company, appellant here, issued a bond in this guardianship in the sum of $30,000, which was filed with the clerk the 22d day of October, 1923. It is upon this bond that the present action is brought.

In view of the questions which arise in this case, it is necessary to state further facts at this point. In October, 1923, the following order was entered of record:

"And now on this 24th day of October, 1923, it appearing to the court that Kirk Milnes, guardian of said Abel Milnes, Jr., incompetent, having filed a surety bond in the sum of $30,000, executed by the Federal Surety Company, the same is hereby accepted. It is further ordered by the court that said guardian be, and he is hereby, ordered to file a report to this court before the sureties on the old bond are by the court released."

On December 6, 1923, Kirk Milnes, as guardian, filed what is designated as his "Eighth Annual Report," in which he recites:

"That, *at the request of the sureties on his bond,* W. J. Moore and Joseph Kingsbury, said sureties having been released as his bondsmen, and thereupon this guardian furnished another bond executed by the Federal Surety Company as surety, which bond has been accepted and approved by the clerk of the court; that in order to show the condition of the estate of his ward at the date of the *substitution of the said Federal Surety Company*

*in place of his original bondsmen,* he files this report of his doings in said estate since the date of his last report herein, to wit, the 14th day of April, and up to the date of the execution of said new bond, to wit, the 13th day of October, 1923.'' (The italics are ours.)

On December 7, 1923, the court entered an order ''that the final report of the old bondsmen and accounting up to October 13th be and the same is hereby approved.''

On December 29, 1923, the court made the following entry:

''And now on this 29th day of December, 1923, this matter coming on for hearing before the court for the release of the old bondsmen, and it appearing to the court that the guardian having filed in this court on October 22d a bond of the Federal Surety Company, it is therefore ordered by the court that the old bondsmen, W. J. Moore and Joseph Kingsbury, be, and they are hereby, released and discharged.''

Kirk Milnes, guardian, died on the 9th day of December, 1924. After his death, the American Savings Bank of Muscatine was duly appointed administrator of his estate, which trust it accepted, and qualified as administrator. As such it administered the estate, and was discharged on the 25th day of January, 1926.

On January 5, 1925, the district court appointed plaintiff herein, Robert Brooke, as guardian of the estate of Abel Milnes, Jr., a person of unsound mind, to succeed the aforesaid Kirk Milnes, and with the authority of the court, he brings this action to recover on this surety bond. After this, the ward died, and J. E. McIntosh was appointed administrator of his estate, and as such, he came into this action, and joined the guardian as plaintiff.

The defendant surety company contends that it is not liable on the bond in suit; that it is a substitute bond; and that it is not liable for defalcations which occurred prior to the approval of its bond. By motion, the appellant sought to bring into the proceedings Moore and Kingsbury, the former sureties, in order that the rights between them and the appellant might be adjudicated in this proceeding. This motion was overruled. It is the claim that they (the former bondsmen) were not legally released, because they served no notices and made no petition to the court

682

as a basis for the order releasing them, and they rely largely upon certain sections of our statute. See Sections 1283, 1284, and 1285, Code of 1897, and Sections 1177-a and 1177-b, Supplement to the Code, 1913.

The statutes just mentioned provide means for sureties on a bond to obtain release from further liability thereon. The purpose of the statutes is that the court and the principal on the bond may have due notice of the desire of the surety to be released from the obligations. It will be noticed that, under one method, the surety may petition the court, giving 24 hours' notice to his principal. By the other method, he may serve 30 days' notice on his principal and clerk, of his desire to be released.

From the order of October 24, 1923, the eighth annual report, filed December 6, 1923, and the order of court made December 29, 1923, it is apparent that both the principal and the court were fully advised as to the desire of the former sureties to be released from further liability upon the guardian's bond, and, in fact, the eighth annual report recites that the sureties have been released, at their request. It is clear that the principal knew of the desire of the sureties to be released, and that he had co-operated with them in obtaining their release. It does not appear that any formal petition was filed, or that any notice was served, in compliance with the requirements of either of the statutory methods mentioned above; but the purpose of such petition and the notice was fully attained, because the guardian (principal) reported to the court the desire of the sureties to be released, and the court shows an understanding of this fact, because, in its first order, made on October 24, 1923, it refused to enter an order releasing the sureties until the guardian had made a report and accounting to the court; hence, every purpose of the requirements of the statute with regard to the petition and notice had been accomplished here, and I do not think that the failure to give the notice or to file the petition would invalidate the order releasing the sureties. Such matters may be waived.

The case of *Kempner v. County of Galveston,* 73 Tex. 216 (11 S. W. 188), was a suit upon the bond of a county treasurer. The bond upon which suit was brought was claimed to be a bond given in substitution of a former bond. The statute required that a surety upon a county officer's bond could terminate his liability upon the obligation by making an application for re-

lease and serving a notice and copy of the application upon the county officer. In the *Kempner* case, the surety appeared before the commissioner's court with the treasurer, and made application for release. The treasurer immediately filed a new bond, and the sureties upon that bond, when sued, sought to be released from liability, for the reason that the statutory mode of obtaining the release of the former surety was not followed, in that the application and notice prescribed by statute were not served. In disposing of this contention, the court said:

"The policy of the statute is to permit the surety upon a county officer's bond to terminate his liability upon the obligation at any time. Rev. Stats., Art. 3435. The right is given absolutely. But, in order to protect the rights of the officer, it is necessary to afford him a reasonable opportunity to give a new bond. For this purpose, the statute provides that an application shall be made by the surety, and notice given to the officer, and a copy of the application served upon him. Id. The provision is made solely for his protection. Being informed of the wish of his surety to be released, we see no reason why he may not waive the notice and give the new bond. No personal prejudice can accrue either to him or to the new sureties by such a course. If the attempt were to vacate his office without the statutory notice, a different question would be presented. In the present case, the surety upon the old bond appeared before the court with the treasurer, and made known his desire; the treasurer in effect waived the statutory notice, accepted the result, and immediately filed a new bond, which was at once approved. We fail to perceive that either he or his sureties have any right to complain."

The only purpose in serving such a notice and filing such petition is to advise the court and the principal that the surety wishes to be released. It is necessary that the court be advised, in order that the guardian may be required to file a new bond, to protect those interested in the estate. It is necessary that the guardian be advised, so that he may have a reasonable time within which to procure new sureties upon his bond. Where a new bond with a sufficient surety was filed, as in the instant case, with the knowledge of all concerned, we think that the purpose of the statute was carried out; and I would hold that the order made by the court, releasing Moore and Kingsbury, was a valid

and binding order, and released them from further liability, although, of course, they would still be bound for acts which the guardian had performed in the past. The release could only discharge them from liability on the bond for future acts.

The instant bond must be classified as one of three kinds: (1) an original bond, (2) a substitute bond, or (3) an additional or cumulative bond. Clearly, it is not an original bond. As heretofore stated, it is conceded by the parties that practically all of the ward's estate was misappropriated and converted by Kirk Milnes, former guardian, prior to October 13, 1923, when the bond in suit was first heard of.

The devastavit by the former guardian, Kirk Milnes, prior to October 13, 1923, did not include a Liberty bond for $1,000 and interest coupons attached thereto. As to this bond and coupons, the appellant is liable, as the conversion of this property took place after the approval of the appellant's bond.

The primary contention is that the bond in suit is an additional and cumulative bond, for the reason that the sureties upon the original bond failed to follow the statutory steps prescribed for their obtaining a release; but an examination of the cases relied upon by appellee discloses that they are based on dictum, and that they are cases in which suit was brought against the original surety; and such rules are *not* laid down to govern actions brought against the later set of sureties alone. See *Clark v. American Sur. Co.*, 171 Ill. 235 (49 N. E. 481); *Rush v. State ex rel. Bixler*, 19 Ind. App. 523 (49 N. E. 839); *Richardson v. Whitworth*, 103 Ga. 741 (30 S. E. 573); *Pollock v. Cox*, 108 Ga. 430 (34 S. E. 213); *Johnson v. Johnson*, 6 Heisk. (Tenn.) 240.

The filed stipulation not only admits the time of the defalcation, and by whom, but also that neither the Federal Surety Company (appellant) nor any of its officers or agents had any knowledge of any defalcation by Kirk Milnes, as guardian, prior to the execution and approval of the bond in suit, and that the appellant was not a party to the Cedar County probate proceedings in which an order was asked to establish the delinquency and the amount of the delinquency of Kirk Milnes as guardian.

Reference is made in the majority opinion to the application (Exhibit D) of Kirk Milnes to the defendant Surety Company for a guardian's bond. The application is dated October 13, 1923, is in usual form, with questions attached, to be answered

by the applicant. One question asked was whether Milnes, the guardian, was "indebted to the estate," and the answer given was: "Yes. Mortgage of $18,000 described above."

There is no evidence in this record to show when the mortgage was due and payable or collectible. Milnes was insolvent when he died (December 9, 1924).

The guardian is required to use due diligence in the collection of any debt owed to the estate, and his surety is liable in case of a breach of that duty and resulting loss to the estate. The burden is on the plaintiff here to show a breach of the conditions of the defendant-surety's bond before the surety becomes liable. There is no evidence of such breach during the existence of the defendant's bond. Mere knowledge of the existence of the mortgage indebtedness could not create a liability on the defendant's bond, in the absence of proof of a breach of the conditions of the instant bond after its acceptance by the court.

This case was commenced and tried in Scott County, presumably by reason of the legal domicile of the defendant surety company.

Is the bond in suit a substitute bond or an additional or cumulative bond? It is quite universally recognized that an essential distinction exists between these two classes of bonds, with corresponding difference in liability. The character of the bond depends upon the intent of the parties and the statutory purpose to be served. If the bond in the instant case is an additional, and not a substitute, bond, then it is a cumulative security, and it would not only be prospective in liability, but also retrospective or retroactive. In other words, the defendant surety would be held to contemplate and assume liability for the defaults of the guardian prior to the execution of the bond in suit.

A bond having a retroactive or retrospective liability is a bond which, in its very essence and purpose, is to supplement, strengthen, or reinforce the security already existing and afforded by some prior bond or bonds. Quotations from a few cases will illustrate this point. The case of *Lacoste v. Splivalo,* 64 Cal. 35 (30 Pac. 571), involved a suit on an administrator's bond which was given pursuant to a statute providing that, in case of the insufficiency of an administrator's bond, the administrator may be required to give further and additional security.

The defense of the surety was that the loss sustained to the estate was due to defaults of the administrator prior to the execution and approval of the bond in suit. The Supreme Court of California construed the statute as admitting but one interpretation, and that is:

"* * * that the 'further security' authorized by them to be required is, and was intended to be, cumulative. The very purpose of requiring it is to strengthen, to increase, the security previously existing; and it is obvious that the purpose would fail unless both bonds relate to the same subject-matter. * * * To say that, when they executed an 'additional' bond, they did not intend to add to, to increase, to augment, the security previously existing, is to do violence to the language the parties themselves employed, as well as to contravene the clear purpose of the law under which the order was made requiring the bond to be given."

In *McWilliams v. Norfleet*, 60 Miss. 987, the case involved a guardian's second bond. The sureties thereon defended in part on the ground of prior devastavit. The bond in suit was given under an order of court (as here) discharging sureties on the former bond for all acts up to the time of the filing of the new bond. Incidentally, it may be said that the approval of reports has no "greater effect than prima-facie evidence of accuracy of the account as stated therein" (*Des Moines Sav. Bank v. Krell*, 176 Iowa 437, 444) ; but in that case, all surety companies were parties defendant. The court in the *McWilliams* case, supra, held that the second bond was not liable for prior defaults, and the decision was based upon the legal distinction between an "additional" and a "substitute" bond. The court said:

"In the first class, the 'additional security' or 'new bond' was required to supplement the old, the two together making one security for the ward; and in such cases, both the old and new sureties or bonds stood responsible for any default occurring at any period of guardianship. In the other case, each bond was the sole and separate security for a different period of time."

See, also, *State v. Hull*, 53 Miss. 626, 629.

This is the very distinction made in the instant case, and so recognized and intended by the trial court. In other words, it is

the claim of the appellant in the case at bar that the bond in suit is a substitute bond, for the reason that it was given to succeed another bond; that its purpose is simply that of substitution of the former bond. It must be conceded that the former bond was, at the time of the commencement of the instant action, liable for any devastavit that occurred while the former bond was in force, and it must be further conceded, as a matter of law, that, if the bond in suit was a substitute, and not an additional, or cumulative, bond, the liability thereunder was prospective, and not retroactive, in the absence of any facts disclosing the intention of the parties that the substitute bond was intended to be additional and cumulative. The record is devoid of any evidence disclosing that the bond in suit was to be or operate as additional, cumulative security.

In *Aetna Indem. Co. v. State,* 101 Miss. 703 (57 So. 980), a guardian's second bond was involved, and it was held that the second bond was not liable for prior devastavit. After reviewing the facts and certain decisions, it is said:

"In view of the above decisions, and since it is plain that the guardian converted the funds of the wards to his own use, while acting as guardian under the first bonds, it must follow that appellant is not liable on its bond for the actual conversion of the funds; but the first bondsmen are, and the court erred when it dismissed this suit as to them."

See, also, *Central Bank. & Sec. Co. v. United States Fid. & Guar. Co.,* 73 W. Va. 197 (80 S. E. 121).

So, in the instant case, the bondsmen on the prior bonds when the devastavit occurred were proper parties, and the court should have permitted the defendant surety to bring in the sureties on the bond when the devastavit occurred.

The naked right of contribution does not afford much consolation to a solvent surety when the first surety is insolvent, or execution-proof, and his principal is dead, and his estate insolvent.

In *Thompson v. Dickerson,* 22 Iowa 360, it was held that sureties on a substituted official bond were not liable for money received and misappropriated before the substitute bond was given, and it was held that, since the bond was not retrospective in its terms, there could be no ground for claiming that it cov-

ered past delinquencies, "as sustaining the conclusion reached." The bond in the *Thompson* case, supra, was conditioned that the principal "would 'pay over to the officer or person entitled thereto, all money which may come into his hands by virtue of his office;'" and in passing upon the liability of that undertaking, this court observed that the bond in the case before us "was a substitute * * * one, and not an additional one."

The material part of the bond in the case before us reads:

"The condition of the above obligation is such that if the above named Kirk Milnes who has been appointed guardian of said incompetent *shall* faithfully discharge the office and trust of such guardian, according to law, and *shall* render a fair and just account of such guardianship from time to time, whenever thereunto required by law, and pay to said incompetent all moneys, goods and chattels, title papers and effects which *may* [*shall*] come into the hands or possession of such guardian, belonging to such incompetent when such shall be entitled thereto, or any subsequent guardian, should the court direct—then this obligation to be void, otherwise to remain in full force and effect." (The italics are ours.)

It will be observed that the verbs used to express the obligation are couched in the future tense. There is nothing retrospective in the character of the language used. The appellant's undertaking was prospective only in its terms.

In *Knepper v. Glenn*, 73 Iowa 730, a guardian's bond was involved which contained an obligation and condition quite similar to the instant case. The surety therein defends on the ground that the guardian had squandered all of the ward's estate before the bond in suit was executed, and before the date of the guardian's appointment. It is said:

"It is true that the undertaking of the surety in the bond was against the default of the guardian in the future. The conditions of the bond were not retrospective."

The surety was held liable on the special ground and finding that the principal had defaulted as guardian, which necessarily was a determination that the guardian had on hand the ward's money at the date of his appointment. This language is found in *Bockenstedt v. Perkins*, 73 Iowa 23, which involved a guardian's

bond containing practically the same language as in the bond in the instant case:

"It is true that defendant's undertaking was for the performance in the future of the duties of the guardianship. They are not responsible for any default which may have occurred before they signed the bond."

In *In re Estate of Donlon*, 203 Iowa 1045, the distinction between a substitute and a cumulative bond is recognized, and it is said: "On the record, the second bond is not a substitute. It is cumulative \* \* \*." See, also, *Lyngen v. Tessum*, 169 Minn. 304 (211 N. W. 314). In *Ellyson v. Lord*, 124 Iowa 125, and in *Douglass v. Kessler*, 57 Iowa 63, the bond in question was construed to be an additional bond, and therefore cumulative and retroactive in effect.

Our own statutes provide for (1) additional security, and (2) for discharge of former security and substitution of new surety, as the case may be. Section 1285, Code of 1897 (Section 1086, Code of 1924); Section 3198, Code of 1897 (Section 12604, Code of 1924).

The distinction between a substitute and an additional bond is quite universally recognized. The distinction is substantial, not fanciful; real, not imaginative. The difference is noted and emphasized in Herrick and Doxsee on Iowa Probate Law and Practice (3d Ed.), Vol. 1, page 336, and Vol. 2, page 1066. It is a sound principle in defining legal liability that, in the absence of any statute extending the liability of sureties on a bond, the liability should begin only with the undertaking, as such must be supposed to have been their intention. See *Sebastian v. Bryan*, 21 Ark. 447; *McCauley v. American Sur. Co.*, 81 Mont. 161 (263 Pac. 90); *State v. Shackleford*, 56 Miss. 648; *American Bond. Co. v. People*, 46 Colo. 394 (104 Pac. 81); *Williams v. State ex rel. Roberts*, 89 Ind. 570; *Boyd v. Withers*, 103 Ky. 698 (46 S. W. 13); *Aetna Acc. & Liabil. Co. v. Langley*, 68 Okla. 283 (174 Pac. 1046).

In the *Shackleford* case, supra, it is said:

"Penal bonds are never held to be retrospective in their operation, unless plainly so intended and expressed. The bond here sued on is manifestly prospective only."

In the *American Bond. Co.* case, supra, it is said:

"It is a general principle that sureties on a guardian's bond are liable only for the money or property that actually was or came into the hands of the guardian during the term covered by the bond on which they were sureties, and that penal bonds are never held to be retrospective in their operation, unless plainly so intended and expressed."

Furthermore, a court is and should be reluctant to hold a surety liable for prior defalcations occurring before the execution of the bond, as in this suit. See *Greene County v. City Bank of Jefferson,* 196 Iowa 1164; *Royal Indem. Co. v. American Vitrified Prod. Co.,* 117 Ohio St. 278 (158 N. E. 827).

There is a presumption that a surety does not intend to become responsible for acts committed by the principal prior to the effective date of the undertaking. *Merrinane v. Miller,* 157 Mich. 279 (118 N. W. 11); *Tarentum Realty Co. v. McClure,* 230 Pa. St. 266 (79 Atl. 551); *Citizens' Sav., Loan & Bldg. Assn. v. Weaver,* 127 Ill. App. 252; *Farrar v. United States,* 5 Pet. (U. S.) 373. Stearns on Suretyship (3d Ed.) 204, Section 129, states the general rule:

"Resort must be had to the language of the bond itself, to determine the time within which defaults must occur, in order that they may be covered by the undertaking. The bond will not be retroactive unless the contract so stipulates; it may be unlimited in duration, or expire at a definite time, depending upon the language of the instrument."

It may not be said that the bond in suit is security for an accounting, irrespective of the time of defalcation. See 32 Cyc. 113. The instant surety, not being liable for the value of the property converted, is not liable for the failure of the guardian to render an account of it. It is stipulated when the devastavit occurred, and that it did occur before the bond in suit was executed. As said in *Gonser v. State ex rel. Haskins,* 30 Ind. App. 508 (65 N. E. 764):

"The conversion and the default—in fact, the whole transaction—happened while the first bond was in force, and the sureties thereon must be held for it. * * * He must be held liable upon the bond which was in force at the time the public funds

were received and converted to his own use, or diverted from the use of the township."

The *Gonser* case, supra, involved a substitute bond given for and during a term of office. Only two bonds were involved,— the original and its substitute. The intent and purpose of an instrument are the all important thing; and manifestly, if the terms of a bond are not retrospective, and the bond is not and cannot be viewed as an additional or cumulative security, then there is no retroactive liability for prior defaults.

The pertinent question is: What fund was the bond in suit intended to secure? Was it intended to cover funds that had already been squandered and dissipated, or funds that, at the time of the execution of the second bond, were received or to be received by the principal, but subsequently converted? In brief, was the intent of the bond prospective or retrospective? When that question is answered, this case finds solution.

The appellant's bond was given for a statutory purpose, and is valid only for a statutory purpose of substitution, and it must be said that the liability thereon is to be measured by its intent and purpose. Here the appellant's undertaking was an obligation given under the statute permitting the substitution of the bond of a guardian. We will neither add to nor subtract therefrom. *Curtis v. Michaelson*, 206 Iowa 111; *Schisel v. Marvill*, 198 Iowa 725; *Monona County v. O'Connor*, 205 Iowa 1119. The bond itself is in the usual statutory form. Its liability is to be measured by its intent and purpose. It is true that, when ambiguities exist, they are construed, as a matter of law, against a surety company; but there are no ambiguities in the instant case. The instant bond must be viewed as a substitute bond, and was, in fact, so given. The plain intent of the parties in this case, including the records of the probate court of Cedar County relating to the filing and acceptance of appellant's bond, points to one conclusion. This court should not violate or ignore the clear intent of the parties, gathered from the language of the instrument read, and interpreted in the light of the circumstances attending its making and the apparent purpose it was intended to serve. *Van Buren County v. American Sur. Co.*, 137 Iowa 490.

The liability of the defendant surety must be determined in connection with the purpose for which the undertaking was

given. *Grafton v. United States Fid. & Guar. Co.*, 227 N. Y. 162 (124 N. E. 742). See, also, *Westervelt v. Mohrenstecher*, 22 C. C. A. 93 (76 Fed. 118). The statute allowing substitution becomes a part of the undertaking, and is read into it. The undertaking must, accordingly, be construed in connection therewith. *Franzen v. Southern Sur. Co.*, 35 Wyo. 15 (246 Pac. 30).

We now recur to the primary question presented on this appeal: Shall appellant's undertaking, a substitute guardian's bond, be treated as additional, cumulative, and reinforcing security, so as to give it a retroactive operation, to cover loss sustained before the bond was executed? I would answer in the negative, and this answer would compel a reversal. I would reverse.