FRANCIS VARGA, Executor, Appellee, v. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant, et al.

No. 41479.

December 13, 1932.

Kelly, Shuttleworth & McManus and H. B. White, for appellant.

McGinnis & McGinnis, W. J. Springer, Chas. D. Van Werden, and R. B. Hawkins, for appellees.

DE GRAFF, J.—Fred E. Teale was appointed executor of the will of Almena Elizabeth Gardner, deceased, by the district court of Decatur county, Iowa, on July 6, 1920. On the same date, he qualified and gave bond as executor in the penal sum of $10,000, with the appellees Helen R. Van Werden and L. P. Van Werden as sureties. Thereafter and on October 22, 1920, the said Fred E. Teale executed and filed in the estate a bond denominated as "Bond of Executor on Sale of Real Estate" in the penalty of $200,000 with the appellees Bert Teale, James F. Harvey, Helen R. Van Werden, L. P. Van Werden and Thomas Teale as sureties thereon.

The bond upon which plaintiff's action was instituted was given by Fred E. Teale as executor and the appellant United States Fidelity & Guaranty Company as surety, under date of January 20, 1926. It was in the penal sum of $10,000.

Fred E. Teale died in the latter part of January, 1930, and on January 30, 1930, Francis Varga was appointed executor of the Gardner estate to succeed him and qualified the next day. The appellee Bert Teale was appointed administrator of the estate of Fred E. Teale. At the time this suit was commenced, Thomas Teale, one of the sureties on the $200,000 bond mentioned above, had died, and J. L. Mendenhall was appointed executor and trustee of his estate.

The foregoing facts are admitted, or were established, without dispute, by evidence introduced in the trial court. Shortly after the appointment of Francis Varga as executor, he commenced suit against Bert Teale, administrator of the estate of Fred E. Teale, deceased, and the United States Fidelity & Guaranty Company upon the executor's bond in the penal sum of $10,000, which was given under date of January 20, 1926. It was alleged in the petition, as amended, that the former executor Fred E. Teale was short in his cash account as such executor in the amount of $8,595.84, and that a further shortage in the amount of about $5,400 had occurred in the estate through the making of an unauthorized loan by him, represented by a note secured by a second mortgage on Helen R. Van Werden's undivided interest in certain real estate in Decatur county, Iowa. The said Helen R. Van Werden was one of the sureties on the original $10,000 executor's bond given July 6, 1920, and also one of the sureties on the $200,000 bond given October 22, 1920. The appellant filed answer denying liability and pleading certain affirmative defenses.

The appellant surety company also filed a motion in the trial court alleging the execution and filing of the $10,000 executor's bond by Fred Teale in said estate on July 6, 1920, in which Helen R. Van Werden and L. P. Van Werden were sureties, and the execution and filing of the $200,000 bond on October 22, 1920, upon which the said Helen R. Van Werden and L. P. Van Werden, Bert Teale, James F. Harvey and Thomas Teale were sureties; that the plaintiff Varga had brought suit on its bond; that the other bonds were still in effect; that the said Fred E. Teale and Thomas Teale were deceased, and the names of their respective administrator and executor, and asked that an order be made requiring the individual sureties on the two bonds mentioned, or their representatives, to be brought into the case to respond to its cross-petition.

This motion was sustained, and the United States Fidelity & Guaranty Company filed a cross-petition against the defendant Bert Teale, administrator of the estate of Fred E. Teale, the former executor, and the individual sureties named above and the representatives of those deceased, and for relief asked that, in the event the court found that there was any liability upon the defendant United States Fidelity & Guaranty Company, on the suit of the plaintiff, it be subrogated to the rights of the plaintiff as against the defendants to its cross-petition, and that it have judgment for complete exoneration and indemnity, or that the court decree contribution as between the defendant sureties for their respective shares of the loss, if any, in accordance with the facts and equities of the case, if any judgment was entered in favor of the plaintiff and against the United States Fidelity & Guaranty Company.

The evidence showed that on July 5, 1921, Fred E. Teale filed in the office of the clerk of the district court proper proof of publication of the notice of his appointment. The plaintiff testified that all claims which had been filed against the estate had been paid, as well as all inheritance taxes, income taxes, federal estate taxes and other taxes due from this estate up to the time of the trial. All fees had been paid which were owing to the executor, Fred E. Teale, or his attorneys prior to the death of Fred E. Teale, and no claim had been filed in the estate asking additional compensation in behalf of the executor or his attorneys.

At the time of the trial, the record showed that there were unpaid court costs in connection with the administration of the estate

amounting to approximately $30.00, of which a portion thereof had been incurred since the appointment of the present executor.

The will required that all real estate of which the testator died seized be sold as soon as possible after her death and the proceeds used for the purpose of paying certain legacies and bequests and the establishment of certain trust funds. Certain trusts which had been created were set aside, and there was no dispute that the funds in said trusts were intact at the time of the death of Fred E. Teale. All legacies had been paid prior to Fred E. Teale's death, except a few bequests to charitable and benevolent institutions.

The plaintiff testified that all personal property coming into the hands of the former executor had been converted into cash and distributed during the conduct of the administration of the estate by Fred E. Teale. So that at the time of the appointment of the present executor no personalty came into his hands except $6,732.62, a tax certificate of approximately $1,077, and whatever interest he acquired under the $5,450 note and mortgage given by Helen R. Van Werden. The plaintiff also testified that after the payment in full of the bequests and legacies and the cost of administration there would be no property to pass under the residuary clause of the will.

The trial court held that there was no liability on the part of the appellant as to the second mortgage note signed by Helen R. Van Werden, for the reason that the making of said note had already been approved by order of the court before the execution and filing of the bond upon which the United States Fidelity & Guaranty Company was surety, such order being on file at the time said bond was given; and the trial court held the surety company was not liable upon the claimed shortage and loss to the estate growing out of that transaction.

The trial court, as is hereinbefore set out, entered judgment against the United States Fidelity & Guaranty Company for $8,969.-80, with interest at six per cent from June 2, 1932, and the costs. Upon the cross-petition of the appellant as against the individual sureties L. P. Van Werden and Helen R. Van Werden, the trial court found the surety company was entitled to contribution, and entered judgment for $4,503.65 with interest at six per cent from June 2, 1932, in favor of the United States Fidelity & Guaranty Company and against L. P. Van Werden and Helen R. Van Werden, the defendants on the cross-petition, on account of their suretyship

on the $10,000 executor's bond given by Fred E. Teale on July 6, 1920. However, the trial court found that the defendants to the cross-petition of the United States Fidelity & Guaranty Company, Bert Teale, James F. Harvey, Helen R. Van Werden, L. P. Van Werden and Bert Teale, administrator of the estate of Fred E. Teale, deceased, were not liable for contribution, or otherwise, to the appellant on account of and in connection with the special bond to secure the proceeds of the sale of real estate filed on October 22, 1920, in the penal sum of $200,000, and dismissed the surety company's cross-petition as to said defendants. The United States Fidelity & Guaranty Company appealed.

The foregoing facts were admitted in the pleadings or proven upon the trial. Out of these facts the appellant contends that a number of legal questions arise, and there are ably presented in its brief and argument several propositions which are relied upon for reversal of the trial court. We will briefly state the principal questions argued.

1. The appellant contends that appellee Francis Varga, as the successor of Fred E. Teale, the former executor, is an administrator *de bonis non;* that all personalty coming into the hands of the original executor had been converted into cash, administered and distributed during the lifetime of the former executor, so that the former executor at the time of his death left no unadministered assets in *specie* to come into the hands of the present executor. Appellant also contends that the former executor gave notice of his appointment in the time and manner required by law and filed proper proof thereof in the office of the clerk of the court, that the time for filing claims against the estate has elapsed, and that all claims which were filed have been paid. As is heretofore pointed out, all taxes of every character were paid during the administration of the former executor, together with the costs of administration, with the exception of possibly a small balance due the clerk for court costs, and there is cash in the estate with which to pay said court costs. From these facts, the appellant insists that the present plaintiff is not the real party in interest, and has no capacity to bring and maintain this suit; that the cause of action, if any, is vested in the heirs, legatees and beneficiaries of the trusts.

2. Appellant also contends that the trial court erred in entering any judgment whatever against it. It takes the position that there was no competent evidence of any breach of the bond which

it signed as surety, nor of any failure to account upon the part of the former executor or the appellant, as his surety. In other words, the appellant claims that the appellee Francis Varga failed to make out a prima-facie case in the trial court or to prove a cause of action by any competent evidence.

3. The surety company also contends that if anybody is liable in the case, the individual sureties on the $200,000 special bond for the sale of real estate are liable, and that if there is any competent evidence in the record to show a failure to account or a breach of the bond, such funds were the proceeds of the sale of real estate for which the sureties on the $200,000 bond are said to be primarily liable.

4. Furthermore, appellant contends that if there is any liability upon it in this case (which it denies) then the sureties on the $200,000 bond are also liable, and appellant is entitled either to be subrogated to the rights of the plaintiff as against them upon the theory that their bond is primarily liable, or that they should be required in any event to contribute to appellant their proportionate share of the loss. While advancing this latter proposition, the surety company expressly states that it is not receding from its contention that there is no liability in the case and that the trial court erred in entering judgment against it.

We might say in passing that no proceedings were ever had in the trial court, as permitted by statute, to obtain the release of the sureties on any of the bonds, and no order of court was ever made releasing any of said sureties. Therefore, if the bonds were legal instruments, under our holding in Brooke v. American Savings Bank, 207 Iowa 668, the bonds are still in effect. Apparently, the trial court applied this theory as to the $10,000 bond given July 6, 1920, but did not apply it as to the $200,000 bond, the trial court taking the view that said bond imposed no liability upon the signers. No order of court was made requiring the filing of such bond, but the third paragraph of the testator's will required all real estate to be sold as soon as possible after her decease. Other propositions are urged upon this court by the appellant, but the foregoing may fairly be said to be the principal questions argued.

It will be readily observed that if the surety company is correct with reference to the position which it takes in the second point mentioned, wherein it is claimed that the plaintiff failed to establish a cause of action against it by competent evidence in the trial

court, consideration of the other questions argued becomes imma-
terial. We will therefore proceed to an examination of the evidence
by which the appellee Francis Varga sought to sustain the allega-
tions of his petition to the effect that there was a shortage in the
cash account of Fred E. Teale, the former executor, and that said
executor and his surety have failed to account for funds belonging
to the estate.

Before any evidence was introduced in the trial court, the fol-
lowing stipulation and agreement was dictated into the record and
joined in by all parties:

"It is agreed by all of the parties connected with this lawsuit
that all of the evidence that is to be offered and introduced upon
the trial of this cause is to be taken and received by the court sub-
ject to any and all objections of every kind, nature and character
known to the law. This agreement applies to the competency of the
witnesses and the competency of any documentary evidence offered,
and the object and purpose of the agreement is that of saving the
time required to make the objections at the time the testimony is
offered and presented."

The appellee Francis Varga admitted in his argument that:

"As stated in Appellant's Argument with reference to Point II,
which deals primarily with the competency of the evidence intro-
duced by the plaintiff, this appellee, to show the executor's short-
age in the cash amount of the said Fred E. Teale, executor, appel-
lant is entitled to the benefit of any legal objection that could be
made to the admission of this evidence."

The appellee Francis Varga attempted, by various methods of
proof, and his own testimony, to establish the shortage for which
he sought to recover judgment below.

The documentary evidence consisted of pages from a book said
to be a ledger account, deposit slips and duplicate deposit slips
relied upon to show deposits in various banks by Teale, statements
from various banks purporting to show bank accounts, and files
from the probate proceedings consisting of reports by the former
executor and orders of court.

The appellee Francis Varga testified that he had received $6,-
732.62 belonging to the estate since his appointment, which repre-
sented cash which had been in the hands of Fred E. Teale at the

time of the latter's death. In other words, the plaintiff admitted his receipt of that sum of money belonging to the estate. This money came into his hands after his appointment, and had formerly been in the possession of Fred E. Teale, as executor.

██ The appellee Francis Varga testified that he went to the former home occupied by the deceased executor, Fred E. Teale, and there, among other things, found a book which was identified as Exhibit 28. The book was found in the home of the daughter of Fred Teale, with whom he resided. Certain pages of the book were also marked as exhibits, and are relied upon to establish a portion of the cash account of the former executor. There is some question in the state of the record as to whether or not the specific pages from this book which were supposed to contain the cash account were actually offered as evidence on the trial; but be that as it may, there was no evidence introduced to actually identify the book as the book in which the deceased executor kept the accounts pertaining to the estate of Almena Elizabeth Gardner. The appellee Francis Varga did not testify from his own personal knowledge by competent testimony as to what this book was, and he did not identify the pages from the book from his own personal knowledge as to the facts. In other words, there was no competent testimony introduced to establish the fact that the pages of this book were the actual account in which Fred E. Teale kept his cash account and records pertaining to his administration of the trust.

The book was shown to be in Teale's handwriting, and the appellees contend that it was admissible under the provisions of Section 11280 of the Code of Iowa, 1931, upon the theory that the entries were made in the performance of a duty specifically enjoined by law and made against the interest of the party making them. The trouble with this contention is that the book contained various notations, memoranda and accounts, and nobody identified by competent testimony the pages in question. That is the difficulty of this theory. Appropriate objections were made by appellant to all of the questions pertaining to the book, Exhibit 28, and the pages thereof and the testimony, and apt motions to strike the testimony were also made. Pursuant to the stipulation under which the evidence was taken, appellant is permitted to withhold its objections until the case is submitted in this court, when it is too late for the appellee to mend his hold or supply any defects which appear in the form of question or the proof.

■ The appellee also introduced some deposit slips and duplicate deposit slips of various banks located in Decatur county, Jefferson, Iowa, and elsewhere, some of which were made out in the name of Fred E. Teale and some in the name of Fred E. Teale, Executor. In most of them, the estate of Almena Elizabeth Gardner is not mentioned. However, there was no evidence to show that the deposit slips were in the handwriting of Teale, or in whose handwriting they were; no proof that the deposit slips represented an actual transaction evidencing the deposit of any funds belonging to the Gardner estate in any bank. There was no evidence as to whether any of the money was actually placed in the bank, and there was no competent proof that Teale carried an account in any of these banks in which funds of the estate were deposited. Some of the bank statements were received after the death of Fred Teale in response to letters written by the appellee Varga to the respective banks. The letters from the banks and statements were offered in evidence. In some cases, the deposit slips accompanied the letters and statements. The appellee Francis Varga practically admits in his argument that the deposit slips and statements were insufficient to establish any ultimate fact,—in this connection, admitting:

"These deposit slips and statements, even if not properly admissible, have really nothing to do in showing the executor's shortage in said estate."

The letters, statements and deposit slips were not the best evidence by which to establish the deposit of funds belonging to the Gardner estate in the various banks in the name of Fred E. Teale, as executor of said estate. The bank's books would have been the best evidence to prove these deposits, and the deposits would have to have been identified as funds belonging to the Gardner estate. Appropriate objections were made by appellant's counsel to the admission of the letters, deposit slips and bank statements and the testimony relating thereto.

It was admitted upon the trial that the executor Fred E. Teale had fully accounted for all moneys coming into his hands up to October 22, 1928, when he filed his report, Exhibit 16, with the court. The appellant contends that there was no evidence to establish any default or any breach of the terms and conditions of its bond after that date.

The appellee Francis Varga takes the position that there was

properly introduced in evidence the last annual report of the said Fred E. Teale, executor, which was Exhibit 16, showing a cash balance on hand of $2,469.26. This is the report showing the condition of the estate as of October 22, 1928. He also relies on the report of the sale of real estate, identified in the record as Exhibit 19, which he claims shows the receipt of $15,395, and Exhibit 20, being an order of the court approving the report of the sale of real estate appearing in Exhibit 19. The appellant admits that the reports of its principal, the former executor, and the orders of court were properly introduced in evidence and are competent, but insists that said reports show the receipt by the executor of the total sum of $6,318.01, or $414.61 less than the amount of cash the present executor admits he has collected, which represents funds formerly in the possession of Fred E. Teale prior to his death and belonging to the estate. In other words, the appellant claims that the record shows that Varga admits having received from his predecessor more than the record shows Mr. Teale received and had on hand according to these reports. We can see no escape from the conclusion that the surety company is correct in this contention.

The cash balance on hand October 22, 1928, as shown by the report Exhibit 16, was $2,469.26. The appellee Francis Varga admitted that up to that time all of the cash coming into the hands of Fred E. Teale, as executor of the Gardner estate, had been properly collected, distributed and accounted for. Therefore, commencing with October 22, 1928, the appellant was obliged to account for $2,469.26. Exhibit 19, filed on or about April 1, 1929, which was the report of the sale of real estate, contained, among other things, a report of the sale of certain parcels of land for a total consideration of $15,395, and included the description of the real estate, the number of acres in each tract, the name of the purchaser, and the price to be paid per acre, and, among other things, stated:

"And in each and every instance the purchasers paid the twenty-five per cent of the purchase price in cash to this executor and were given ninety days in which to pay the other seventy-five per cent, which is to be paid on or before ninety days from this date."

The report was simply a report of sale. The deeds were not yet ready for delivery.

In the order, Exhibit 20, which was made on April 1, 1929, approving the report contained in Exhibit 19, the court, in its find-

ings, after reciting the various sales, found: "That in each and every instance the purchaser paid the twenty-five per cent of the purchase price in cash to said executor and was given ninety days in which to pay the other seventy-five per cent, all as provided in said notice of sale." From the report and order, it appears that the sale was conducted on March 30, 1929. The report and order showed that the balance of the $15,395 was to be paid within ninety days from March 30, 1929. The record is barren of evidence that this amount was collected by the executor or paid. In other words, there is no proof that the executor, Fred E. Teale, during his lifetime received the total sale price of these lands in the amount of $15,395. The receipt of the funds cannot be presumed. Therefore, the sum which it was shown he admitted he received in Exhibit 19, to wit, $3,848.75, added to the $2,469.26, balance on hand as shown in the report filed October 22, 1928, equals $6,318.01. The appellee Francis Varga admitted the collection by him of $6,732.62, or $414.-61 more than the record shows, as established by these reports, the former executor and his surety liable to account for.

We are compelled to hold that the contention of appellant is correct, and that no competent evidence was introduced in the trial court which would sustain a money judgment against the appellant. Some oral testimony of the appellee Francis Varga was given in addition to the written and documentary evidence which has been heretofore discussed, but this evidence was vulnerable to the proper objections and motions to strike such testimony urged in this court by counsel for appellant. We have carefully scrutinized this testimony and the entire record, and after reviewing the evidence we are obliged to hold that a cause of action against appellant was not established by competent evidence on the trial of this cause.

Therefore, it is unnecessary to discuss or decide upon the other questions relied upon by the appellant in argument, and for the reasons given this cause must be and it is hereby—Reversed.

STEVENS, C. J., and EVANS, ALBERT, KINDIG, WAGNER, and MITCHELL, JJ., concur.